S.C. No. 27233

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

MICHAEL A. PEROUTKA, CHUCK
BALDWIN, and DAVID P.
PORTER,

     Appellants- Appellants,

     vs.

DWAYNE D. YOSHINA, Chief
Elections Officer, State of
Hawaii,

     Appellee-Appellee.

_____

RALPH NADER, PETER MIGUEL
CAMEJO, and ROBERT H.
STIVER,

     Appellants-Appellants

     vs.

DWAYNE D. YOSHINA, Chief
Elections Officer, State of
Hawaii,

     Appellee-Appellee.

_____

CIVIL NOS.   04-1-1904
               04-1-1905

APPEAL FROM THE
1) DECISION OF THE COURT,
AND ORDERS filed on November
23, 2004

2) FINAL JUDGMENTS filed on
April 5, 2005

FIRST CIRCUIT COURT

HONORABLE EDEN ELIZABETH
     HIFO
HONORABLE SABRINA McKENNA
Judges

[Consolidated with S.C. NO.
27234]

APPELLANTS' JOINT OPENING BRIEF

APPENDICES 1-4

STATEMENT OF RELATED CASES

CERTIFICATE OF SERVICE

ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION


EXHIBIT 11

ERIC A. SEITZ          1412
LAWRENCE I. KAWASAKI     5820
820 Mililani Street, Suite 714
Honolulu, Hawai'i 96813
Telephone: (808) 533-7434
Facsimile: (808) 545-3608

Attorneys for Appellants
MICHAEL A. PEROUTKA, CHUCK BALDWIN,
and DAVID P. PORTER, and

RALPH NADER, PETER MIGUEL CAMEJO,
and ROBERT H. STIVER

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . .   i

I.   STATEMENT OF THE CASE . . . . . . . . . . .   1

II.  STATEMENT OF POINTS OF ERROR. . . . . . . .   8

III. STANDARD OF REVIEW. . . . . . . . . . . . .   9

IV.  QUESTIONS PRESENTED . . . . . . . . . . . .   9

V.   ARGUMENT. . . . . . . . . . . . . . . . . .   9

     A.   The trial court erred in determining that
          practices and procedures utilized and
          relied upon by Appellees to count and
          determine the validity and sufficiency
          of the signatures on Appellants' petitions
          are not unconstitutional . . . . . . . . .   9

     B.   The trial court erred in determining that
          the Office of Elections' determination that
          Appellants failed to submit sufficient valid
          signatures to qualify to have their candidates'
          names placed on the presidential ballot was
          not arbitrary, capricious and/or based on any
          credible evidence. . . . . . . . . . . . .   15

     C.   The trial court erred in determining that
          Appellants were provided with a fair
          administrative hearing before an impartial
          and objective hearing officer. . . . . . .   16

VI.  CONCLUSION. . . . . . . . . . . . . . . . .   19

Michael A. Peroutka, Chuck Baldwin, and
David Porter v. Dwayne D. Yoshina, Civil No.
04-1-1904, DECISION OF THE COURT AND ORDER
filed November 23, 2004 . . . . . . . . . . .   Appendix 1

Ralph Nader, Peter Miguel Camejo, and
Robert H. Stiver v. Dwayne D. Yoshina, Civil
No. 04-1-1905, DECISION OF THE COURT AND
ORDER filed November 23, 2004 . . . . . . . .   Appendix 2

<u>Michael A. Peroutka, Chuck Baldwin, and</u>
<u>David Porter v. Dwayne D. Yoshina</u>, Civil No.
04-1-1904, FINAL JUDGMENT filed April 5, 2005 .  Appendix 3

<u>Ralph Nader, Peter Miguel Camejo, and</u>
<u>Robert H. Stiver v. Dwayne D. Yoshina</u>, Civil No.
04-1-1905, FINAL JUDGMENT filed April 5, 2005 .  Appendix 4

TABLE OF AUTHORITIES

CASES                                                          Page(s)

Anderson v. Celebrezze, 460 U.S. 780,
75 L.Ed.2d 547, 103 S.Ct. 1564 (1983) . . . . . . . . . 10, 11

Erum v. Cayetano, 881 F.2d 689 (9th Cir. 1989) . . . . . 10

Holmes by Holmes v. Sobol, 690 F.Supp. 154
(W.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . 17, 19

In re Driscoll, 847 A.2d 144 (Pa. 2004) . . . . . . . . 14

In re Murchinson, 349 U.S. 133, 99 L.Ed. 942,
75 S.Ct. 623 (1955) . . . . . . . . . . . . . . . . . . 18, 19

In re Nader, 858 A.2d 1167 (Pa. 2004) . . . . . . . . . 11

In re Nomination Petition of Cooper,
643 A.2d 717 (Pa.Cmwlth. 1994). . . . . . . . . . . . . 13, 14, 16

In re Nomination Petition of Flaherty,
770 A.2d 327 (Pa. 2001) . . . . . . . . . . . . . . . . 9

Nomination Petition of Delle Donne,
779 A.2d 1 (Pa.Cmwlth. 2001). . . . . . . . . . . . . . 13

Palaez v. Waterfront Commission of New York Harbor,
454 N.Y.S.2d 132 (2d Dep't 1982). . . . . . . . . . . . 17, 19

Sifagaloa v. Bd. of Trustees, Employee's
Retirement System, 74 Haw. 181 (1992) . . . . . . . . . 16

State v. Lesueur, 38 S.W. 325 (Mo. 1896). . . . . . . . 12, 15

State v. Zimmerman, 130 N.W.2d 753 (Wis. 1964). . . . . 11

Williams v. Rhodes, 393 U.S. 23, 21 L.Ed.2d 24,
89 S.Ct. 5 (1968) . . . . . . . . . . . . . . . . . . . 10

CONSTITUTIONS, STATUTES, RULES

Article II, §1 of the Constitution
of the United States. . . . . . . . . . . . . . . . . . 10

HRS §11-113 . . . . . . . . . . . . . . . . . . . . . . 3, 4, 7

HRS §11-113(c)(2)(B) . . . . . . . . . . . . . . . . 2, 13

HAR §2-51-110 . . . . . . . . . . . . . . . . . 2

HAR §2-51-112 . . . . . . . . . . . . . . . . . 3

HAR §2-51-113 . . . . . . . . . . . . . . . . . 3

HAR §2-51-113(b) . . . . . . . . . . . . . . . 14

S.C. No. 27233

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

| | | |
|---|---|---|
| MICHAEL A. PEROUTKA, CHUCK BALDWIN, and DAVID P. PORTER,<br><br>    Appllellants-Appellants,<br><br>    vs.<br><br>DWAYNE D. YOSHINA, Chief Elections Officer, State of Hawaii,<br><br>    Appellee-Appellee.<br>_____<br><br>RALPH NADER, PETER MIGUEL CAMEJO, and ROBERT H. STIVER,<br><br>    Appellants-Appellants<br><br>    vs.<br><br>DWAYNE D. YOSHINA, Chief Elections Officer, State of Hawaii,<br><br>    Appellee-Appellee.<br>_____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NOS.  04-1-1904<br>               04-1-1905<br><br>APPEAL FROM THE<br>1) DECISION OF THE COURT, AND ORDERS filed on November 23, 2004<br><br>2) FINAL JUDGMENTS filed on April 5, 2005<br><br>FIRST CIRCUIT COURT<br><br>HONORABLE EDEN ELIZABETH<br>    HIFO<br>HONORABLE SABRINA McKENNA<br>Judges<br><br>[Consolidated with S.C. NO. 27234] |

APPELLANTS' JOINT OPENING BRIEF

I.   STATEMENT OF THE CASE

    A.   Peroutka/Baldwin Appeal, Civil No. 04-1-1904

        Appellants MICHAEL A. PEROUTKA and CHUCK BALDWIN were

independent candidates for election to the offices of President

and Vice President of the United States and are affiliated with

an organization known as the Constitution Party National

Campaign.  Appellant DAVID W. PORTER is a Hawaii resident who

supported and assisted the campaign efforts of candidates
Peroutka and Baldwin. (hereinafter collectively referred to as
"Peroutka/Baldwin Campaign"). RA at 1-57, Civil No. 04-1-1904,
Notice of Appeal from Administrative Decision of Office of
Elections Dated 10/5/04 (hereinafter "RA at __-__, Civil No.
_____"), Memorandum of Law, at p. 1.

On or about September 3, 2004, the Peroutka/Baldwin
Campaign filed signed petitions with the Office of Elections of
the State of Hawaii (hereinafter "Office of Elections") to have
the names of candidates Peroutka and Baldwin placed on ballots in
the State of Hawaii for the presidential elections scheduled to
be conducted on November 2, 2004.[1] RA at 1-57, Civil No. 04-1-
1904, Memorandum of Law, at p. 2.

Pursuant to HAR §2-51-110 a signatory on a presidential
petition is required to (1) print his/her name; (2) sign the name
under which he/she votes; (3) print the address at which the
signatory is registered to vote; (4) indicate his/her birthdate;
and (5) indicate the date signed. There is also a column for the
signatory's social security number; however, providing that
information is optional. The signatory is required to provide
all of the required information in order to verify the identity
of the signatory as a currently registered voter. RA at 70-155,

---

[1]    HRS §11-113(c)(2)(B) requires that applications of
independent presidential candidates be supported by at least one
percent of the number of registered voters who voted in the
previous presidential election.

Civil No. 04-1-1904, Appellee's Answer to the Appellant's
Statement of the Case Including Witness and Exhibit Lists
(hereinafter "RA at 70-155"), at p. 4.

Pursuant to HAR §§2-51-112, 113 the Office of Elections
examined the petition to determine whether each signatory is
qualified to sign a presidential petition.  RA at 1-57, Civil No.
04-1-1904, Exhibit 11.

By letter to the Peroutka/Baldwin Campaign dated
September 20, 2004 the Office of Elections acknowledged its
receipt of 7,195 signatures on the petitions filed in behalf of
candidates Peroutka and Baldwin.  Of those, the Office of
Elections determined that 3,714 were "invalid" and 3,481 were
"valid" which was insufficient to satisfy the requirements for
qualifying to place candidates Peroutka and Baldwin on the
ballot.[2]  RA at 1-57, Civil No. 04-1-1904, Exhibit 2.  A few days
later Appellee DWAYNE D. YOSHINA, Chief Elections Officer, Office
of Elections (hereinafter "Appellee Yoshina") notified the
Peroutka/Baldwin Campaign that the number of "valid" signatures
was reduced to 3,471 which was 240 signatures less than the 3,711
signatures required to have candidates Peroutka and Baldwin's
names placed on the ballot.  RA at 1-57, Civil No. 04-1-1904,

_____

[2]    The Office of Elections therein also noted that in the
last presidential election (i.e., in 2000) there were 371,033
votes cast and that pursuant to HRS §11-113 in order to qualify
to have their names placed on the ballot 3,711 signatures were
required on their petition.

Exhibit 3.

   The Peroutka/Baldwin Campaign made a timely request for an administrative hearing to contest and review the decision of the Office of Elections.  RA at 1-57, Civil No. 04-1-1904, Exhibit 4.

   On September 30, 2004 Appellee Yoshina convened an administrative hearing to address the Peroutka/Baldwin Campaign's challenge.  Appellee Yoshina sat as the hearing officer, Appellant Porter represented the Peroutka/Baldwin Campaign, and Deputy Attorney General Aaron Schulaner represented the Office of Elections.  At the hearing a staff member of the Office of Elections testified that another recount of the number of valid signatures on the Peroutka/Baldwin Campaign's petition which had been performed earlier that morning identified additional valid signatures on Appellants' petition, and as a result it was determined that the Peroutka/Baldwin Campaign petition contained 3,477 valid signatures.  Because the number of valid signatures did not meet the requirements of HRS §11-113 (i.e., 3,711 signatures) Appellee Yoshina ruled that the Peroutka/Baldwin Campaign did not submit a sufficient the number of valid signatures to place candidates Peroutka and Baldwin on the presidential ballot (i.e., 3,711 signatures).  RA at 1-57, Civil No. 04-1-1904, Exhibit 6.

   On October 18, 2004 the Peroutka/Baldwin Campaign appealed the administrative hearing decision of the Office of

Elections to the Circuit Court of the First Circuit alleging that the procedures followed by the Office of Elections were unconstitutional. RA at 1-57, Civil No. 04-1-1904. Following a hearing on November 1, 2004, the trial court affirmed Appellee Yoshina's decision. RA 175-182, Civil No. 04-1-1904, Decision of the Court and Order.

Final Judgment subsequently was entered on April 5, 2005 (RA at 232-233, Civil No. 04-1-1904), and the Peroutka/Baldwin Campaign timely appealed (RA at 234-257, Civil No. 04-1-1904).

B.    Nader/Camejo Appeal, Civil No. 04-1-1905

Appellants RALPH NADER and PETER MIGUEL CAMEJO were independent candidates for election to the offices of President and Vice President of the United States. Appellant ROBERT H. STIVER is a Hawaii resident who supported and assisted the campaign efforts of candidates Nader and Camejo. (hereinafter collectively referred to as "Nader/Camejo Campaign"). RA at 1-32, Civil No. 04-1-1905, Notice of Appeal from Administrative Decision of Office of Elections Dated 10/18/04, Memorandum of Law, at p. 1.

On or about September 3, 2004, the Nader/Camejo Campaign filed signed petitions with the Office of Elections to have the names of candidates Nader and Camejo placed on ballots in the State of Hawaii for the presidential elections scheduled to be conducted on November 2, 2004. RA at 1-32, Civil No. 04-1-

5

1905, Memorandum of Law, at p. 1-2.  After an examination to determine whether each signatory is qualified to sign a presidential petition by, letter  to the Nader/Camejo Campaign dated September 20, 2004 the Office of Elections acknowledged its receipt of 7,184 signatures on the petitions filed in behalf of candidates Nader and Camejo.  Of those, the Office of Elections determined that 3,512 were "invalid" and 3,672 were "valid" which was insufficient to satisfy the requirements for qualifying to place candidates Nader and Camejo on the ballot.  RA at 1-32, Civil No. 04-1-1905, Exhibit 2.  A few days later Appellee DWAYNE D. YOSHINA, Chief Elections Officer, Office of Elections (hereinafter "Appellee Yoshina") notified the Nader/Camejo Campaign that the number of "valid" signatures was reduced to 3,124 which was 587 signatures less than the 3,711 signatures required to have candidates Nader and Camejo's names placed on the ballot.  RA at 1-32, Civil No. 04-1-1905, Exhibit 3.

The Nader/Camejo Campaign made a timely request for an administrative hearing to contest and review the decision of the Office of Elections.  RA at 1-32, Civil No. 04-1-1905, Exhibit 4.

On September 29, 2004 an administrative hearing was convened to address the Nader/Camejo Campaign's challenge.  At the hearing the Office of Elections agreed to re-evaluate and recount the signatures submitted by the Nader/Camejo Campaign. RA at 53-139, Civil No. 04-1-1905, Appellee's Answer to Appellant's Statement of the Case Including Witness and Exhibit

6

List (hereinafter "RA at 53-139), Affidavit of Robert H. Stiver, §§13, Exhibit 5.

Following its review on October 7-12, 2004, by letter dated October 18, 2004, Appellee Yoshina informed the Nader/Camejo Campaign that an additional 193 signatures were determined to be valid, and as a result it was determined that the Nader/Camejo Campaign petition contained 3,338 valid signatures. Because the number of valid signatures did not meet the requirements of HRS §11-113 (i.e., 3,711 signatures) the Office of Elections determined that the Nader/Camejo Campaign did not submit a sufficient number of valid signatures to place candidates Nader and Camejo on the presidential ballot. RA at 33-34, Civil No. 04-1-1905, Affidavit of Eric A. Seitz, Exhibit 8.

On October 18, 2004 the Nader/Camejo Campaign appealed to the Circuit Court of the First Circuit alleging that the procedures followed by the Office of Elections were unconstitutional. RA at 1-32, Civil No. 04-1-1905. Following a hearing on November 1, 2004, the trial court affirmed the Office of Elections' decision. RA 159-167, Civil No. 04-1-1905, Decision and Order.

Final Judgment subsequently was entered on April 5, 2005 (RA at 217-218, Civil No. 04-1-1905,), and the Nader/Camejo Campaign timely appealed (RA at 219-242, Civil No. 04-1-1905).

II.  STATEMENT OF POINTS OF ERROR

   1.   The trial court erred in determining that the procedures used in verifying signatures on Appellants nomination petitions are not unconstitutional.

      ___.  The Court concludes that is not clear, manifest, and unmistakable that the relevant laws and procedures are unconstitutional.

RA at 175-182, Civil No. 04-1—1904, at ¶31; RA at 159-167, Civil No. 04-1-1905, at ¶35.

   2.   The trial court erred in determining that the review of Appellants' petitions by Appellees was not arbitrary, capricious and/or based on any credible evidence.

      ___.  The Court, having reviewed the record on appeal, does not conclude that the actions taken or decisions below were arbitrary or capricious in any way.

RA at 175-182, Civil No. 04-1—1904, at ¶40; RA at 159-167, Civil No. 04-1-1905, at ¶44.

   3.   The trial court erred in determining that Appellants were provided a fair administrative hearing.

      ___.  However, the Supreme Court of Hawaii in the same case clearly held that administrators serving as adjudicators are presumed to be unbiased, and the presumption can be rebutted by showing of disqualifying interest either pecuniary or institutional.

      ___.  In this case the Chief Elections Officer has no pecuniary interest.

      ___.  In terms of institutional interest, the Chief Elections Officer's only interest is to see that fair elections be conducted.

      ___.  As such, the Court concludes that this is not

the type of institutional interest that would be required to overturn his decision.

RA at 175-182, Civil No. 04-1-1904, at ¶¶43-46; RA at 159-167, Civil No. 04-1-1905, at ¶¶47-50.

III.  <u>STANDARD OF REVIEW</u>

In reviewing the order of a trial court concerning the validity of challenges to a nomination petition, the standard of review is whether the findings of fact are supported by substantial evidence, whether there was an abuse of discretion, or whether errors of law were committed.  <u>In re Nomination Petition of Flaherty</u>, 770 A.2d 327 (Pa. 2001).

IV.  <u>QUESTIONS PRESENTED</u>

1.  Whether the trial court erred in determining that practices and procedures utilized and relied upon by Appellees to count and determine the validity and sufficiency of the signatures on Appellants' petitions are <u>not</u> unconstitutional.

2.  Whether the trial court erred in determining that the Office of Elections' determination that Appellants failed to submit sufficient valid signatures to qualify to have their candidates' names placed on the presidential ballot was <u>not</u> arbitrary, capricious and/or based on any credible evidence.

3.  Whether the trial court erred in determining that Appellants were provided with a fair administrative hearing before an impartial and objective hearing officer.

V.  <u>ARGUMENT</u>

A.  The trial court erred in determining that practices and procedures utilized and relief upon by Appellees to count and determine the validity and sufficiency of the signatures on Appellants' <u>petitions are not unconstitutional</u>

9

Although Article II, §1 of the Constitution gives the States the power to regulate election of the President, this power is subject to the limitation that such power may not be exercised in a way that violates other specific provisions of the Constitution. <u>Williams v. Rhodes</u>, 393 U.S. 23, 30, 21 L.Ed.2d 24, 31, 89 S.Ct. 5 (1968)(holding that States must provide feasible means for independent candidates to appear on the general election ballot).[3]

"Candidate eligibility requirements implicate basic constitutional rights of voters as well as those of candidates." <u>Erum v. Cayetano</u>, 881 F.2d 689, 691 (9th Cir. 1989). Ballot access restrictions "place burdens on two different, although overlapping, kinds of rights - the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 787, 75 L.Ed.2d 547, 556, 103 S.Ct. 1564 (1983). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." <u>Williams v. Rhodes</u>, 393 U.S.

---

[3]    Although the election in which Appellants sought to participate has concluded, this case is not moot because Appellants' action is based on a controversy that is "capable of repetition, yet evades review. See <u>Erum v. Cayetano</u>, 881 F.2d 689 (9th Cir. 1989).

23, 31, 21 L.Ed.2d 24, 31, 89 S.Ct. 5 (1968)(holding that the
freedom of association is protected by the First Amendment, and
this freedom is protected from infringement by the States by the
Fourteenth Amendment).

> "[In] the context of a Presidential election, state
> imposed restrictions implicate a uniquely important
> national interest.  For the President and Vice
> President of the United States are the only elected
> officials who represent all of the voters in the
> Nation.  Moreover, the impact of the votes cast in each
> State is affected by the votes cast for the various
> candidates in other States.  Thus in a Presidential
> election a State's enforcement of more stringent ballot
> access requirements, including filing deadlines, has
> impact beyond its borders.  Similarly, the State has a
> less important interest in regulating Presidential
> elections than statewide or local elections, because
> the outcome of the former will be largely determined by
> voters beyond the State's boundaries."

Anderson v. Celebrezze, supra at 794-5, 75 L.Ed.2d at 561, 103
S.Ct. at ___ .

       Because ballot access restrictions place burdens on
"our most precious freedoms," and "the State has a less important
interest in regulating Presidential elections than statewide or
local elections," Id., the trial court should have evaluated the
validity of the Office of Elections' challenges under the
principle that the election code should be liberally construed so
as not to deprive a candidate of the right to run for office or
the voters of their right to elect the candidate of their choice.
E.g., In re Nader, 858 A.2d 1167, 1177 (Pa. 2004); State v.
Zimmerman, 130 N.W.2d 753, 757 (Wis. 1964)("Respondent would have
no right to reject the filing of these nomination papers because

of paste-ons in the absence of possession of some fact tending to rebut such presumption of regularity."); State v. Lesueur, 38 S.W. 325, 328 (Mo. 1896)("We have indulged a liberal intendment in favor of many on the principle of idem sonans [...]").

In the instant cases Appellants submit that the trial court did not engage in any fact finding or employ a proper standard in determining the validity of signatures on Appellants' nomination petitions.

It is undisputed that the Office of Elections merely identified the signatory by his/her name[4] and then obtained the signatory's voter records to determine whether the signatory is an active and properly registered voter.  If the signatory does not provide all of the required information on the petition or if the information is not immediately legible to the examiner the Office of Elections simply refuses to count the signature.  RA at 175-182, Civil No. 04-1—1904, at ¶¶10, 11; RA at 159-167, Civil No. 04-1-1905, at ¶¶10, 11.

In the instant cases the Office of Elections rejected a large number of signatures as illegible "without making a serious

---

[4]    Although the Office of Elections' contends that their review involved cross-referencing the name and/or social security number of a signatory, because providing a social security number is optional, virtually all signatories failed and/or refused to disclose their social security numbers on the petitions, see RA **, Certified Record on Appeal, Civil No. 04-1-1904, Vol II, at 98-150, Vol. III, at 271-1253, 1270-1271; RA **, Certified Record on Appeal, Civil No. 04-1-1905, at Vol. I, at 101-788, Vol. III, at 882-889;   RA at 175-182, Civil No. 04-1—1904, at ¶14; RA at 159-167, Civil No. 04-1-1905, at ¶14.

effort to decipher the names and/or to use other identifying information," RA at 1-32, Civil No. 04-1-1905, Affidavit of Robert H. Stiver, ¶¶15, 16; RA at 1-52, Civil No. 04-1-1904, Affidavit of David W. Porter, at ¶11. The evidence, which was never disputed below, shows that the procedures and practices employed by the Office of Elections were designed to eliminate names, rather than to validate them. Although a certain number of signatories were deemed valid after their initial review, the Office of Elections, sua sponte, conducted a second review and invalidated an additional number of signatures that previously had been deemed valid. RA at 1-57, Civil No. 04-1-1904, Exhibit 3 (notifying Peroutka/Baldwin Candidates that the number of valid signatures was reduced from 3,481 to 3,471); RA at 1-32, Civil No. 04-1-1905, Exhibit 3 (notifying Nader/Camejo Candidates that the number of valid signatures was reduced from 3,672 to 3,124); Compare, Nomination Petition of Delle Donne, 779 A.2d 1 (Pa.Cmwlth. 2001)(a signature must be so illegible as to preclude verification); In re Nomination Petition of Cooper, 643 A.2d 717, 725 (Pa.Cmwlth. 1994)("Serious doubts regarding the genuineness of signatures challenged as fraudulent were resolved in favor of Cooper since the court was not absolutely convinced that these signatures were not genuine.").

Furthermore, although the Office of Elections requires that signatories provide their address and date of birth (H.R.S. §11-113(c)(2)(B); RA at 175-182, Civil No. 04-1-1905, at ¶¶8, 9;

13

RA at 159-167, Civil No. 04-1-1905, at ¶¶8, 9), the examiners did
not attempt to validate signatories by cross-referencing that
information on the statewide voter registration system.  RA at 1-
32, Civil No. 04-1-1905, Affidavit of Robert H. Stiver, ¶¶15, 16;
RA at 1-52, Civil No. 04-1-1904, Affidavit of David W. Porter, at
¶11. E.g., In re Nomination Petition of Cooper, 643 A.2d 717,
725, n. 19 (Pa.Cmwlth. 1994)(identification of these signatures
was attempted by comparison to the unofficial street list of the
Philadelphia County Board of Elections).

The Office of Elections also rejected signatures where
a signatory's address on the petition did not match the address
of the signatory on the statewide voter registration system (RA
at 70-155, Civil No. 04-1-1904, Exhibit 6, Findings of Fact,
Conclusions of Law and Decision of Office of Elections, III.
Findings of Fact, at ¶3), including those that could be verified
by the use of post office box addresses and/or other identifying
information (RA at 1-57, Civil No. 04-1-1904, Affidavit of David
W. Porter, at ¶11; RA at 1-32, Civil No. 04-1-1905, Affidavit of
Robert H. Stiver, ¶16).  HAR §2-51-113(b) does not authorize the
Office of Elections to invalidate a signature merely on the basis
of the signatory having a different address on the statewide
voter registration system.  Furthermore the disqualification is
particularly onerous because a voter is not even required to live
in any particular district in order to qualify to vote for the
President and Vice President.  Cf., In re Driscoll, 847 A.2d 144

14

(Pa. 2004)(holding that a candidate's incorrect listing of his address on his nomination petition is not a material defect because he is not required to live in the congressional district to run as representative of that district).

Accordingly, this Court should determine that the practices and procedures utilized by the Office of Elections to count and determine the validity and sufficiency of the signatures on Appellants' petitions are unconstitutional.

B.  The trial court erred in determining that the Office of Elections' determination that Appellants failed to submit sufficient valid signatures to qualify to have their candidates' names placed on the presidential ballot was <u>not</u> arbitrary, <u>capricious and/or based on any credible evidence</u>

Because the practices and procedures utilized by the Office of Elections to count and determine the validity and sufficiency of the signatures on Appellants' petitions are unconstitutional (see above) this Court should determine that the trial court by determining that the rulings of the Office of Elections were <u>not</u> arbitrary, capricious and/or based on any credible evidence.

In the instant cases the Office of Elections never "indulged a liberal intendment in favor of many on the principle of idem sonans" (<u>State v. Lesueur</u>, <u>supra</u>, at 328).  In fact, the Office of Elections rejected a large number of signatures as illegible "without making a serious effort to decipher the names and/or to use other identifying information," RA at 1-32, Civil

No. 04-1-1905, Affidavit of Robert H. Stiver, ¶¶15, 16; RA at 1-52, Civil No. 04-1-1904, Affidavit of David W. Porter, at ¶¶11, 15, 16, 17, Exhibit 9. E.g., <u>In re Nomination Petition of Cooper</u>, 643 A.2d 717, 725, n. 19 (Pa.Cmwlth. 1994)(identification of these signatures was attempted by comparison to the unofficial street list of the Philadelphia County Board of Elections).

Accordingly, this Court should hold that the Office of Elections' determination that Appellants failed to submit sufficient valid signatures to qualify to have their candidates' names placed on the presidential ballot was arbitrary, capricious and/or was not based on any credible evidence.

C.    The trial court erred in determining that
      Appellants were provided with a fair
      administrative hearing before an impartial and
      <u>objective hearing officer</u>

In <u>Sifagaloa v. Bd. of Trustees, Employee's Retirement System</u>, 74 Haw. 181, 189 (1992), this Court, in relevant part, reaffirmed the following principles under which due process claims are to be analyzed:

> There are certain fundamentals of just procedure
> which are the same for every type of tribunal and every
> type of proceeding. Concededly, a fair trial in a fair
> tribunal is a basic requirement of due process. This
> applies to administrative agencies which adjudicate as
> well as to courts. Of course, a biased decision maker
> is constitutionally unacceptable. But no one would
> argue seriously that the disqualification of decision-
> makers on grounds of actual bias prevents unfairness in
> all cases. So our system of justice has always
> endeavored to prevent even the probability of
> unfairness.

> The Supreme Court teaches us too that justice can

16

perform its high function to the best way only if it
satisfies the appearance of justice. For in a popular
government, justice must not only be done but must
manifestly be seen to be done. And, there can be
little question that the use of a truly independent
adjudicator is essential to attainment of this goal.
Indeed, if there exists any reasonable doubt about the
adjudicator's impartiality at the outset of the case,
provision of the most elaborate procedural safeguards
will not avail to create an appearance of justice.

Since the fundamentals of just procedure impose a
requirement of impartiality on administrative agencies
which adjudicate as well as on courts, we see no reason
why an administrative adjudicator should be allowed to
sit with impunity in a case where the circumstances
fairly give rise to an appearance of impropriety and
reasonably cast suspicion on his impartiality. [...]

74 Haw. 189-190 (citations and quotations deleted).

Where a hearing officer, a government official,

reviewing a challenge to an administrative action is familiar

with substantially all the pertinent facts before the hearing

commences and acted in an adversary role prior to the hearing,

the petitioner is deprived of a fair hearing before a neutral

hearing officer. Palaez v. Waterfront Commission of New York

Harbor, 454 N.Y.S.2d 132, 135 (2d Dep't 1982)("One of the rights

secured to an accused person by the law of the land is, that his

accuser shall not be at the same time his judge; that is a

principle of law that is fundamental; it is the first requisite

to a fair and impartial trial; it is a privilege that the law of

the land guarantees to every man when his life or liberty, good

name, fame or property is involved."); Cf. Holmes by Holmes v.

Sobol, 690 F.Supp. 154, 161 (W.D.N.Y. 1988)(holding that a

government official who is directly involved in establishing and executing policies governing a program cannot be presumed to be an impartial and independent fair hearing officer for the purposes of reviewing program actions); In re Murchinson, 349 U.S. 133, 136, 99 L.Ed. 942, 946, 75 S.Ct. 623 (1955)("[...] no man can be a judge of his own case and no man is permitted to try cases where he has an interest in the outcome.  That interest cannot be defined with precision.  Circumstances and relationships must be considered.  This court has said, however, that every procedure which would offer a possible temptation to the average man as judge ... not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.").

In the instant case Appellee Yoshina, Chief Election Officer, Office of Elections, State of Hawaii first determined that the Peroutka/Baldwin Candidates did not submit sufficient signatures on their petition to qualify to have their names placed on the general election ballot for president and vice president.  RA at 1-57, Civil No. 04-1-1904, Exhibits 2-5.  Then, Appellee Yoshina convened an administrative hearing to address the Peroutka/Baldwin Campaign's challenge and himself sat as the hearing officer, in effect reviewing his own previous decisions. RA at 1-57, Civil No. 04-1-1904, Exhibit 6.

As a result, the hearing was a farce.  Appellee Yoshina, by virtue of his role as Chief Election Officer,

18

responsible for establishing and executing the policies governing
the Office of Elections, can hardly be presumed to be the
impartial and independent fair hearing office to which Appellants
Peroutka/Baldwin were entitled.  Holmes by Holmes v. Sobol, 690
F.Supp. 154 (W.D.N.Y. 1988).  By seating himself as the hearing
officer on the Peroutka/Baldwin Candidate's challenge to the
rejection of their petitions, Appellee Yoshina acted as accuser
and judge in violation of Appellants' right to due process.
Palaez v. Waterfront Commission of New York Harbor, 454 N.Y.S.2d
132 (2d Dep't 1982); In re Murchinson, 349 U.S. 133, 99 L.Ed.
942, 75 S.Ct. 623 (1955).  Similarly, the Nader/Camejo candidates
could not have received a fair and impartial hearing and
therefore were compelled to settle for still another flawed
recount.

VI.   CONCLUSION

       For all of the foregoing reasons, this Court should vacate
the determinations of the trial court and remand these matters
back to the trial court with directions to conduct a thorough
review of the petitions construing the election code liberally
so as not to deprive a candidate of the right to run for office
/
/
/
/
/

19

or the voters of their rights to elect the candidate of their choice.

DATED:  Honolulu, Hawaii, ____July 22, 2005____.


ERIC A. SEITZ
LAWRENCE I. KAWASAKI

Attorneys for Appellants
MICHAEL A. PEROUTKA, CHUCK BALDWIN,
and DAVID P. PORTER, and

RALPH NADER, PETER MIGUEL CAMEJO,
and ROBERT H. STIVER

20

MARK J. BENNETT    2672
Attorney General of Hawaii

AARON H. SCHULANER    6954
HOLLY T. SHIKADA    4017
Deputy Attorneys General
235 S. Beretania Street, Room 304
Honolulu, Hawaii 96813
Telephone: (808) 586-1255
Facsimile: (808) 586-1488
E-mail: aaron.h.schulaner@hawaii.gov

Attorneys for Appellee

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2004 NOV 23  AM 9: 22

F. OTAKE
CLERK

IN THE CIRCUIT COURT FOR THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| MICHAEL A. PEROUTKA, CHUCK BALDWIN, AND DAVID W. PORTER,<br><br>    Appellants,<br><br>  vs.<br><br>DWAYNE D. YOSHINA, Chief Election Officer, State of Hawaii,<br><br>    Appellee. | CIVIL NO. 04-1-1904-10 (SSM)<br>*DECISION OF THE COURT on*<br>FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER<br><br><br>DATE:  November 1, 2004<br>TIME:  11:30 a.m.<br>JUDGE: Hon. Sabrina S. McKenna |

*DECISION OF THE COURT on*

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

The hearing on the appeal filed in this matter was heard before the Honorable Sabrina McKenna on November 1, 2004. Appellants Michael A. Peroutka, Chuck Baldwin, and David W. Porter ("Appellants") were represented by Eric A. Seitz, Esq. Appellee Dwayne D. Yoshina was represented by Deputy Attorney General Aaron H. Schulaner ("Apellee").

This is a review from an administrative agency. Such reviews are to be conducted by the Court pursuant to the criteria under HRS § 91-14(g). According to that subsection, upon review of the record, the Court may affirm the decision of the agency or remand the case with

116832_1.DOC

Appendix 1

instructions for further proceedings, or it may reverse or modify the decision and order if the

substantial rights of the petitioner's may have been prejudiced because the administrative

findings, conclusions, decisions, or orders are (1) in violation of constitutional or statutory

provisions; or (2) in excess of the statutory authority or jurisdiction of the agency; or (3) made

upon unlawful procedure; or (4) affected by other error of law; or (5) clearly erroneous in view

of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary, or

capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The Court, having the opportunity to review the record and documents filed in this appeal

and the parties having the opportunity to present their arguments, finds and rules as follow:

## FINDINGS OF FACT

If it should later be determined that any of these findings of fact should be properly

deemed conclusions of law, they shall be deemed as such.

1.    In order for individuals to qualify for inclusion on the general election presidential

ballot as president and vice president, the individuals must either be designated by a qualified

political party or the individuals must petition to be on the presidential ballot. HRS § 11-

113(c)(1) & (2).

2.    The Appellants were not designated by a qualified political party and thus needed

to petition to be placed on the presidential ballot.

3.    The Chief Election Officer is statutorily authorized to promulgate administrative

rules and regulations to carry out the election laws he is responsible for carrying out. HRS § 11-

4.

4.    The Chief Election Officer has promulgated administrative rules to address the

requirements of HRS § 11-113.

5.    The law provides that the petition shall contain the signatures of currently registered voters, which constitute not less than one per cent of the votes cast in the State at the last presidential election. HRS § 11-113.

6.    In the 2000 presidential election, 371,033 votes were cast in Hawaii. As such the signature requirement is 3,711 for the 2004 presidential petition.

7.    The law also provides that the petition shall be upon a form prescribed and provided by the Chief Election Officer. HRS § 11-113.

8.    The form is prescribed by the Chief Election Officer through administrative rule HAR § 2-51-110.

9.    The form contains the following columns for the voter to fill out (1) "Print Your Name Here," (2) "Sign the Name Under Which You Are Registered to Vote," (3) "Print the Residence Address at Which You are Registered to Vote," (4) "Birth Date," and (5) "Date Signed." There is additionally a column for the voter's "Social Security Number," however completing this column is optional. The signatory is required to provide all of the relevant information in order to verify the identity of the signature as a currently registered voter.

10.    The law provides for the manner in which it is determined whether an individual is qualified to sign the petition. HAR § 2-51-112. Specifically, the signatory is checked against the statewide voter registration system ("SVRS") to determine if he is an active registered voter. The SVRS allows for voter records to be pulled up by either social security number or name. As such, it is critical that signatories comply with the requirement of printing their name in order to avoid illegibility issues, which will result in the record not be being accessible.

11.    After the voter's record is either pulled up by name or social security number, the law provides for the manner in which the signatory will be validated: (1) if the signatory on the petition exists as an active registered voter in the SVRS, then the signatory is counted; (2) if the signatory does not exist as an active registered voter in the SVRS, then the signatory is not counted; (3) if there are duplicate signatures, and the signatory is an active registered voter, then the signatory is counted once; and (4) "if the signatory does not provide all of the required information on the petition or if the information is not legible, then the signatory may not be counted." HAR § 2-51-113(b)(1)-(4).

12.    On September 3, 2004, Appellants filed their petition to place Michael Peroutka and Chuck Baldwin on the presidential ballot as president and vice president.

13.    The procedures of Hawaii Administrative Rules ("HAR") § 2-51-113(b)(1)-(4) were followed in verifying the signatures.

14.    Most signatories did not provide their social security number.

15.    The Court in reviewing the record found that many of the names submitted were not legible.

16.    On September 20, 2004, the Office of Elections issued a letter informing the Appellants that they had failed to meet the requisite amount of signatures necessary for inclusion on the presidential ballot.

17.    The Office of Elections in proofing its calculations, discovered that the numbers initially released needed to be revised.

18.    By letter on September 24, 2004, Appellants were informed of the revised calculations.

19.    On September 24, 2004, Appellants submitted a written request for a hearing.

20. A contested case hearing was subsequently held pursuant to HRS Section 11-113, on September 30, 2004.

21. Over the objection of the Appellants the Chief Election Officer presided over the contested case hearing.

22. The Chief Election Officer issued his Findings of Fact, Conclusions of Law, and Decision on October 5, 2004.

23. The Chief Election Officer determined that Appellants had failed to submit the requisite number of valid signatures required by HRS § 11-113, and as such did not qualify for inclusion on the presidential ballot.

24. Appellants subsequently filed a lawsuit on October 8, 2004, together with fellow presidential aspirant Ralph Nader, in the United States District Court for the District of Hawaii taking issue with the constitutionality of the State's requirements for signatures for presidential petitions. Nader, et al. v. Yoshina, Civ. No. 04-00611 DAE-LEK.

25. On October 13, 2004, the U.S. District Court denied Plaintiffs' Motions for Temporary Restraining Order/Preliminary Injunction.

26. Appellants, subsequently on October 18, 2004, filed the present notice of appeal of the contested case hearing, in which they allege essentially that the procedures followed by the Office of Elections violated due process and that the decisions by the Chief Election Officer were arbitrary, capricious, or characterized by abuse of discretion, or clearly unwarranted exercises of discretion.

## CONCLUSIONS OF LAW

If it should be later determined that any of these conclusions of law should be properly deemed findings of fact, they shall be deemed as such.

1.     Our appellate courts have repeatedly held that legislative enactments are presumptively constitutional, and a party challenging the statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt, and the constitutional defect must be clear, manifest, and unmistakable.

2.     In this case the Court cannot find that there is a clear, manifest and unmistakable constitutional defect in terms of the procedures used in verifying signatures, or in allowing the Chief Election Officer to act as the hearings officer to hear Appellants' objection to their disqualification.

3.     The Court cannot find unconstitutionality beyond a reasonable doubt, particularly because legislative enactments are presumptively constitutional, and this presumption is binding on trial courts.

4.     If a law or procedure is to be held unconstitutional, unless it is clear, manifest, and unmistakable that it is unconstitutional, it is up to the appellate courts to find unconstitutionality.

5.     The Court does not find that it is clear, manifest, and unmistakable that the relevant laws or procedures are unconstitutional.

6.     The United States Supreme Court has been held, that when a state election law imposes reasonable non-discriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the state's important regulatory interest are generally sufficient to justify the restrictions. Anderson vs. Celebrezze, 470 U.S. 780 (1983).

7.     The Ninth Circuit Court of Appeals has held that Hawaii can constitutionally regulate its elections by limiting access of nonpartisan candidates to the general election ballot, and by imposing different requirements as between nonpartisan and partisan candidates. Erum v. Cayetano, 881 F.2d 689 (9th Cir. 1989). This is consistent with the United States Supreme Court

prior holding which allowed different treatment of partisan versus independent candidates. American Party of Texas vs. White, 415 U.S. 767 (1974).

8.    The Court notes that the Ninth Circuit Court of Appeals has consistently held that election cases are different from ordinarily injunction cases, and interference with an election after voting has begun is unprecedented.

9.    In this case the law does allow the Chief Elections Officer to issue administrative rules and pursuant to that power the administrative rules were promulgated.  HRS § 11-4.

10.    When petitions are submitted to place individuals on the presidential ballot, the Chief Election Officer or designated representative verifies the eligibility of the signatures. HAR § 2-51-113.

11.    The signatory must be a registered voter in Hawaii and must appear in the statewide voter registration system as an active registered voter.

12.    The same administrative rule says if the signatory does not provide all of the required information on the petition or if information is not legible, then the signatory may not be counted.

13.    The Court finds these administrative rules to be reasonable restrictions.

14.    The Court, having reviewed the record on appeal, does not find that the actions taken or the decisions below were arbitrary or capricious in any way.

15.    The Appellants have raised the issue of the appropriateness of the Chief Election Officer conducting the underlying administrative hearing.  Appellants believe it would be meaningless for the Court to consider remanding the matter to a separate hearings officer under the circumstances of the case, but instead seek for the underlying decision to be overturned.

16. In terms of due process, the Supreme Court of Hawaii has made it very clear that fundamentals of just procedure also apply to agency hearings. An independent adjudicator is essential to the attainment of the goal that justice be done, and that it be seen to be done. Sifagaloa vs. Board of Trustee, 74 Haw. 181 (1992).

17. However, the Supreme Court of Hawaii in the same case clearly held that administrators serving as adjudicators are presumed to be unbiased, and the presumption can be rebutted by a showing of disqualifying interest either pecuniary or institutional.

18. In this case the Chief Election Officer has no pecuniary interest.

19. In terms of institutional interest, the Chief Election Officer's only interest is to see that fair elections be conducted. *the court assumes that there is not any*

20. As such, ~~I do not see~~ the type of institutional interest that would be required to overturn his decision.

ORDER

IT IS HEREBY ORDERED that the underlying administrative hearing decision is affirmed.

DATED: Honolulu, Hawaii, _NOV 2 2 2004_ 2004.

_____
JUDGE OF THE ABOVE-ENTITLED COURT

APPROVED AS TO FORM:

_____
ERIC A. SEITZ, ESQ.
Attorney for Appellants

---

MICHAEL A. PEROUTKA, ET AL. V. DWAYNE D. YOSHINA, CIVIL NO. 04-1-1904-10 (SSM); FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

MARK J. BENNETT      2672
Attorney General of Hawaii

AARON H. SCHULANER    6954
HOLLY T. SHIKADA      4017
Deputy Attorneys General
235 S. Beretania Street, Room 304
Honolulu, Hawaii 96813
Telephone: (808) 586-1255
Facsimile: (808) 586-1488
E-mail: aaron.h.schulaner@hawaii.gov

Attorneys for Appellee

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2004 NOV 23  AM 9: 19

F. OTAKE
CLERK

IN THE CIRCUIT COURT FOR THE FIRST CIRCUIT

STATE OF HAWAI'I          PLEASE NOTE CHANGES

| | |
|---|---|
| RALPH NADER, PETER MIGUEL CAMEJO, AND ROBERT H. STIVER, | CIVIL NO. 04-1-1905-10 (SSM) |
| | DECISION OF THE COURT |
| Appellants, | FINDINGS-OF-FACT, CONCLUSIONS-OF-LAW, AND ORDER |
| vs. | |
| DWAYNE D. YOSHINA, Chief Election Officer, State of Hawaii, | DATE: November 1, 2004 |
| | TIME: 11:30 a.m. |
| Appellee. | JUDGE: Hon. Sabrina S. McKenna |

DECISION OF THE COURT

FINDINGS-OF-FACT, CONCLUSIONS-OF-LAW, AND ORDER

The hearing on the appeal filed in this matter was heard before the Honorable Sabrina

McKenna on November 1, 2004. Appellants Ralph Nader, Peter Miguel Camejo, and Robert H.

Stiver ("Appellants") were represented by Eric A. Seitz, Esq. Appellee Dwayne D. Yoshina was

represented by Deputy Attorney General Aaron H. Schulaner ("Apellee").

This is a review from an administrative agency. Such reviews are to be conducted by the

Court pursuant to the criteria under HRS § 91-14(g). According to that subsection, upon review

of the record, the Court may affirm the decision of the agency or remand the case with

116846_1.DOC

Appendix 2

RECEIVED NOV 23 2004

instructions for further proceedings, or it may reverse or modify the decision and order if the substantial rights of the petitioner's may have been prejudiced because the administrative findings, conclusions, decisions, or orders are (1) in violation of constitutional or statutory provisions; or (2) in excess of the statutory authority or jurisdiction of the agency; or (3) made upon unlawful procedure; or (4) affected by other error of law; or (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The Court, having the opportunity to review the record and documents filed in this appeal and the parties having the opportunity to present their arguments, finds and rules as follow.

### FINDINGS OF FACT

If it should later be determined that any of these findings of fact should be properly deemed conclusions of law, they shall be deemed as such.

1.     In order for individuals to qualify for inclusion on the general election presidential ballot as president and vice president, the individuals must either be designated by a qualified political party or the individuals must petition to be on the presidential ballot.  HRS § 11-113(c)(1) & (2).

2.     The Appellants were not designated by a qualified political party and thus needed to petition to be placed on the presidential ballot.

3.     The Chief Election Officer is statutorily authorized to promulgate administrative rules and regulations to carry out the election laws he is responsible for carrying out.  HRS § 11-4.

4.     The Chief Election Officer has promulgated administrative rules to address the requirements of HRS § 11-113.

5.    The law provides that the petition shall contain the signatures of currently registered voters, which constitute not less than one per cent of the votes cast in the State at the last presidential election. HRS § 11-113.

6.    In the 2000 presidential election, 371,033 votes were cast in Hawaii. As such the signature requirement is 3,711 for the 2004 presidential petition.

7.    The law also provides that the petition shall be upon a form prescribed and provided by the Chief Election Officer. HRS § 11-113.

8.    The form is prescribed by the Chief Election Officer through administrative rule HAR § 2-51-110.

9.    The form contains the following columns for the voter to fill out (1) "Print Your Name Here," (2) "Sign the Name Under Which You Are Registered to Vote," (3) "Print the Residence Address at Which You are Registered to Vote," (4) "Birth Date," and (5) "Date Signed." There is additionally a column for the voter's "Social Security Number," however completing this column is optional. The signatory is required to provide all of the relevant information in order to verify the identity of the signature as a currently registered voter.

10.    The law provides for the manner in which it is determined whether an individual is qualified to sign the petition. HAR § 2-51-112. Specifically, the signatory is checked against the statewide voter registration system ("SVRS") to determine if he is an active registered voter. The SVRS allows for voter records to be pulled up by either social security number or name. As such, it is critical that signatories comply with the requirement of printing their name in order to avoid illegibility issues, which will result in the record not be being accessible.

11.    After the voter's record is either pulled up by name or social security number, the law provides for the manner in which the signatory will be validated: (1) if the signatory on the petition exists as an active registered voter in the SVRS, then the signatory is counted; (2) if the signatory does not exist as an active registered voter in the SVRS, then the signatory is not counted; (3) if there are duplicate signatures, and the signatory is an active registered voter, then the signatory is counted once; and  (4) "if the signatory does not provide all of the required information on the petition or if the information is not legible, then the signatory may not be counted." HAR § 2-51-113(b)(1)-(4).

12.    On September 3, 2004, Appellants filed their petition to place Ralph Nader and Peter Miguel Camejo on the presidential ballot as president and vice president.

13.    The procedures of Hawaii Administrative Rules ("HAR") § 2-51-113(b)(1)-(4) were followed in verifying the signatures.

14.    Most signatories did not provide their social security number.

15.    The Court in reviewing the record found that many of the names submitted were not legible.

16.    On September 20, 2004, the Office of Elections issued a letter informing the Appellants that they had failed to meet the requisite amount of signatures necessary for inclusion on the presidential ballot.

17.    The Office of Elections in proofing its calculations, discovered that the numbers initially released needed to be revised.

18.    As such, orally on September 23, 2004, and by letter on September 24, 2004, Appellants were informed of the revised calculations.

19.    On September 23, 2004, Appellants submitted a written request for a hearing.

20.    A contested case hearing began on September 29, 2004.

21.    Over the objection of the Appellants the Chief Election Officer presided over the contested case hearing.

22.    On October 1, 2004, prior to the completion of the hearing, the parties reached a settlement.

23.    The terms of the settlement are that the invalid signatures would be reviewed in the presence of a Nader representative, who would have the opportunity during the review to flag those signatures for which the representative disputes the findings of the Office of Elections. The flagged signatures are then provided to the Chief Election Officer to review.  As per the settlement agreement, the decision of the Chief Election Officer is final. The Appellants retain only the right to "challenge those Hawaii statutory or administrative rules that exceed those that are permissible under the U.S. Constitution or federal statutes, including but not limited to the Voting Rights Act of 1965, as amended or under the Hawaii Constitution."

24.    Appellants subsequently filed a lawsuit on October 8, 2004, together with fellow presidential aspirant Michael A. Peroutka, in the United States District Court for the District of Hawaii taking issue with the constitutionality of the State's requirements for signatures for presidential petitions. Nader, et al. v. Yoshina, Civ. No. 04-00611 DAE-LEK.

25.    On October 13, 2004, the U.S. District Court denied Plaintiffs' Motions for Temporary Restraining Order/Preliminary Injunction.

26.    The signature review process set forth in the settlement agreement occurred on October 7-12, 2004.

27.    Subsequently, the Chief Election Officer reviewed the findings of the Office of Elections' staff and the signatures that were flagged by the Nader representative.

28.    The Chief Election Officer issued his findings on October 18, 2004.

29.    The Chief Election Officer determined that Appellants had failed to submit the requisite number of valid signatures required by HRS § 11-113, and as such did not qualify for inclusion on the presidential ballot.

30.    On October 18, 2004, Appellants filed the present notice of appeal of the administrative decision, in which they allege essentially that the procedures followed by the Office of Elections violated due process and that the decisions by the Chief Election Officer were arbitrary, capricious, or characterized by abuse of discretion, or clearly unwarranted exercises of discretion.

## CONCLUSIONS OF LAW

If it should be later determined that any of these conclusions of law should be properly deemed findings of fact, they shall be deemed as such.

1.    Our appellate courts have repeatedly held that legislative enactments are presumptively constitutional, and a party challenging the statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt, and the constitutional defect must be clear, manifest, and unmistakable.

2.    In this case the Court cannot find that there is a clear, manifest and unmistakable constitutional defect in terms of the procedures used in verifying signatures, or in allowing the Chief Election Officer to act as the hearings officer to hear Appellants' objection to their disqualification.

3.    The Court cannot find unconstitutionality beyond a reasonable doubt, particularly because legislative enactments are presumptively constitutional, and this presumption is binding on trial courts.

4.    If a law or procedure is to be held unconstitutional, unless it is clear, manifest, and unmistakable that it is unconstitutional, it is up to the appellate courts to find unconstitutionality.

5.    The Court does not find that it is clear, manifest, and unmistakable that the relevant laws or procedures are unconstitutional.

6.    The United States Supreme Court has been held, that when a state election law imposes reasonable non-discriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the state's important regulatory interest are generally sufficient to justify the restrictions. Anderson vs. Celebrezze, 470 U.S. 780 (1983).

7.    The Ninth Circuit Court of Appeals has held that Hawaii can constitutionally regulate its elections by limiting access of nonpartisan candidates to the general election ballot, and by imposing different requirements as between nonpartisan and partisan candidates. Erum v. Cayetano, 881 F.2d 689 (9th Cir. 1989).  This is consistent with the United States Supreme Court prior holding which allowed different treatment of partisan versus independent candidates. American Party of Texas vs. White, 415 U.S. 767 (1974).

8.    The Court notes that the Ninth Circuit Court of Appeals has consistently held that election cases are different from ordinarily injunction cases, and interference with an election after voting has begun is unprecedented.

9.    In this case the law does allow the Chief Elections Officer to issue administrative rules and pursuant to that power the administrative rules were promulgated.  HRS § 11-4.

10.    When petitions are submitted to place individuals on the presidential ballot, the Chief Election Officer or designated representative verifies the eligibility of the signatures. HAR § 2-51-113.

11.    The signatory must be a registered voter in Hawaii and must appear in the statewide voter registration system as an active registered voter.

12.    The same administrative rule says if the signatory does not provide all of the required information on the petition or if information is not legible, then the signatory may not be counted.

13.    The Court finds these administrative rules to be reasonable restrictions.

14.    The Court, having reviewed the record on appeal, does not find that the actions taken or the decisions below were arbitrary or capricious in any way.

15.    The Appellants have raised the issue of the appropriateness of the Chief Election Officer conducting the underlying administrative hearing.  Appellants believe it would be meaningless for the Court to consider remanding the matter to a separate hearings officer under the circumstances of the case, but instead seek for the underlying decision to be overturned.

16.    In terms of due process, the Supreme Court of Hawaii has made it very clear that fundamentals of just procedure also apply to agency hearings.  An independent adjudicator is essential to the attainment of the goal that justice be done, and that it be seen to be done. Sifagaloa vs. Board of Trustee, 74 Haw. 181 (1992).

17.    However, the Supreme Court of Hawaii in the same case clearly held that administrators serving as adjudicators are presumed to be unbiased, and the presumption can be rebutted by a showing of disqualifying interest either pecuniary or institutional.

18.    In this case the Chief Election Officer has no pecuniary interest.

19.    In terms of institutional interest, the Chief Election Officer's only interest is to see that fair elections be conducted.

116846_1.DOC                                         8

20.    As such, I do not see the type of institutional interest that would be required to

overturn his decision.

## ORDER

IT IS HEREBY ORDERED that the underlying administrative decision is affirmed.

DATED:  Honolulu, Hawaii,_____NOV 2 3 2004_____ 2004.


_____
JUDGE OF THE ABOVE-ENTITLED COURT

APPROVED AS TO FORM:


_____
ERIC A. SEITZ, ESQ.
Attorney for Appellants

RALPH NADER, ET AL. V. DWAYNE D. YOSHINA, CIVIL NO. 04-1-1905-10 (SSM);
FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION

ERIC A. SEITZ          1412
LAWRENCE I. KAWASAKI   5820
820 Mililani Street, Suite 714
Honolulu, Hawaii 96813
Telephone:    (808) 533-7434
Facsimile:    (808) 545-3608

Attorneys for Appellants

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2005 APR -5 PM 3:58

R.N. TANAKA
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| MICHAEL A. PEROUTKA, CHUCK BALDWIN, and DAVID W. PORTER, | )  CIVIL NO. 04-1-1904-10 (SSM) )  ) |
| Appellants, | )  FINAL JUDGMENT ) |
| vs. | ) ) |
| DWAYNE D. YOSHINA, Chief Election Officer, State of Hawai'i | ) ) ) ) |
| Appellees. | ) ) |

FINAL JUDGMENT

        This appeal from the administrative decision of the

Elections Office having been filed on October 18, 2004, and;

        A decision affirming the administrative decision of

the Elections Office having been filed on November 23, 2004;

        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Final

Judgment in favor of Appellee DWAYNE D. YOSHINA, Chief Elections

Officer, State of Hawai'i and against Appellants MICHAEL A.

Appendix 3

PEROUTKA, CHUCK BALDWIN, and DAVID W. PORTER, is entered.  All

other claims, counterclaims, and/or cross-claims are dismissed.

  DATED: Honolulu, Hawaii, _____4-4-09_____.


/s/ Sabrina S. McKenna (Sea
JUDGE OF THE ABOVE-ENTITLED COURT


APPROVED AS TO FORM:


_____
AARON H. SCHULANER
HOLLY T. SHIKADA
Deputy Attorneys General

Attorneys for Appellee
Dwayne D. Yoshina


_____
ERIC A. SEITZ
LAWRENCE I. KAWASAKI

Attorneys for Appellants
Michael A. Peroutka,
Chuck Baldwin, and David
W. Porter


MICHAEL A. PEROUTKA ET AL. v. DWAYNE D. YOSHINO, Civil No. 04-1-
1904-10(SSM); FINAL JUDGMENT

ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION

ERIC A. SEITZ          1412
LAWRENCE I. KAWASAKI   5820
820 Mililani Street, Suite 714
Honolulu, Hawaii 96813
Telephone:    (808) 533-7434
Facsimile:    (808) 545-3608

Attorneys for Appellants

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2005 APR -5  PM 3: 58

M.N. TANAKA
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| RALPH NADER, PETER MIGUEL CAMEJO, and ROBERT H. STIVER, | ) | CIVIL NO. 04-1-1905-10 (SSM) |
| | ) | |
| Appellants, | ) | FINAL JUDGMENT |
| | ) | |
| vs. | ) | |
| | ) | |
| DWAYNE D. YOSHINA, Chief Election Officer, State of Hawai'i | ) | |
| | ) | |
| Appellees. | ) | |

<u>FINAL JUDGMENT</u>

This appeal from the administrative decision of the
Elections Office having been filed on October 18, 2004, and;

A decision affirming the administrative decision of
the Elections Office having been filed on November 23, 2004;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Final
Judgment in favor of Appellee DWAYNE D. YOSHINA, Chief Elections
Officer, State of Hawai'i and against Appellants RALPH NADER,

/

/

Appendix 4

PETER MIGUEL CAMEJO, and ROBERT H. STIVER is entered.  All other
claims, counterclaims, and/or cross-claims are dismissed.

    DATED:    Honolulu, Hawaii, _____ 4-4-05 _____.

/s/ Sabrina S. McKenna (seal)
JUDGE OF THE ABOVE-ENTITLED COURT

APPROVED AS TO FORM:

_____
AARON H. SCHULANER
HOLLY T. SHIKADA
Deputy Attorneys General

Attorneys for Appellee
Dwayne D. Yoshina

_____
ERIC A. SEITZ
LAWRENCE I. KAWASAKI

Attorneys for Appellants
Ralph Nader, Peter Miguel
Camejo, and Robert
H.Stiver

RALPH NADER ET AL. v. DWAYNE D. YOSHINO, Civil No. 04-1-1905-
10(SSM); FINAL JUDGMENT

2

S.C. No. 27233

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

MICHAEL A. PEROUTKA, CHUCK BALDWIN, and DAVID P. PORTER,

     Appellants- Appellants,

     vs.

DWAYNE D. YOSHINA, Chief Elections Officer, State of Hawaii,

     Appellee-Appellee.

RALPH NADER, PETER MIGUEL CAMEJO, and ROBERT H. STIVER,

     Appellants-Appellants

     vs.

DWAYNE D. YOSHINA, Chief Elections Officer, State of Hawaii,

     Appellee-Appellee.

CIVIL NOS.  04-1-1904
             04-1-1905

APPEAL FROM THE
1) DECISIONS OF THE COURT, AND ORDER filed on November 23, 2004

2) FINAL JUDGMENTS, filed on April 5, 2005

FIRST CIRCUIT COURT

HONORABLE EDEN ELIZABETH
   HIFO
HONORABLE SABRINA McKENNA
Judges

[Consolidated with S.C. NO. 27234]

STATEMENT OF RELATED CASES

     Appellants and their undersigned attorneys are not

aware of any related cases within the meaning of this Court's

Rules.

DATED:   Honolulu, Hawaii, _____July 22, 2005_____.

_____
ERIC A. SEITZ
LAWRENCE I. KAWASAKI

Attorneys for Appellants
MICHAEL A. PEROUTKA, CHUCK BALDWIN,
and DAVID P. PORTER, and

RALPH NADER, PETER MIGUEL CAMEJO,
and ROBERT H. STIVER

## CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that two copies of the within were duly served this date by hand-delivery to the following at the addresses listed below:

> MARK J. BENNETT, ESQ.
> AARON H. SCHULANER, ESQ.
> HOLLY SHIKADA, ESQ.
> 235 S. Beretania, Street, Room 304
> Honolulu, Hawaii 96813
>
> Attorneys for Appellee
> DWAYNE D. YOSHINA

DATED:    Honolulu, Hawaii,  _____July 22, 2005_____.

_____
ERIC A. SEITZ