IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RALPH NADER, PETER MIGUEL CAMEJO, ROBERT H. STIVER, MICHAEL A. PEROUTKA, CHUCK BALDWIN, AND DAVID W. PORTER,<br><br>Plaintiffs,<br><br>vs.<br><br>DWAYNE D. YOSHINA, Chief Election Officer, State of Hawaii,<br><br>Defendant. | CIVIL NO. 04-00611 DAE-LEK<br><br>DECLARATION OF DWAYNE D. YOSHINA |

## DECLARATION OF DWAYNE D. YOSHINA

I, DWAYNE D. YOSHINA, declare that:

1. I have personal knowledge of the following facts and am competent to testify to them.

2. I am the Chief Election Officer for the State of Hawaii and have served as such since at least 1996.

3. My responsibilities include the supervision of state elections, and the printing and distribution of ballots, including Absentee Mail ballots, for the State of Hawaii.

112996_3.DOC

EXHIBIT 14

4.  As of the last preceding general election held in 2002, there were 676,242 voters registered in Hawaii.

5.  The signature requirement to qualify as a political party for the 2004 election was 677.

6.  The deadline to file a petition to qualify as a political party was April 1, 2004.

7.  In the 2000, presidential election, 371,033 votes were cast in Hawaii.

8.  In 2004, an individual who is not a qualified political party petitioning for a candidate to be included on the general election presidential ballot was required to submit at least 3,711 signatures by September 3, 2004.

9.  In 2004, the deadline to inform applicants of their eligibility for placement on the presidential ballot was September 20, 2004 and the extension deadline was September 27, 2004.

10.  On September 23, 2004, the Nader Campaign representative, Robert Stiver, requested a Chapter 91 hearing. The Nader hearing commenced on September 29, 2004. Prior to the conclusion of the hearing, the Office of Elections and the Nader Campaign entered into a settlement agreement.

11.  I subsequently approved the Nader Settlement Agreement, which provides that the signatures on the petition submitted by the Nader Campaign will be reviewed again in the presence of a Nader representative. During the review, the

Nader representative will be allowed to flag the signatures he believes should have been counted. Pursuant to the Nader Settlement Agreement, I will subsequently review the challenged signatures and make a final decision.

12. The Office of Elections began reviewing signatures on October 7, 2004. Said signature review is expected to be conclude during the week of October 11, 2004.

13. On September 24, 2004, the Peroutka Campaign requested a Chapter 91 hearing. The hearing was conducted on September 30, 2004, and I issued my decision on October 5, 2004 (the "Peroutka Decision").

14. In the Peroutka Decision, I concluded that the Peroutka Campaign submitted an insufficient amount of valid signatures and, therefore, Michael A. Peroutka and Chuck Baldwin were not eligible to be placed on the presidential ballot.

15. To date, the Peroutka Campaign has not appealed the Peroutka Decision to Circuit Court.

16. On September 28, 2004, election officials began mailing out overseas ballots in order to provide overseas voters sufficient time to receive, vote, and return ballots by mail to the election officials by the date of the election.

17. This was done in order to comply with the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) 42 USC 1973ff et seq. UOCAVA

requires each State to "permit absent uniformed service voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 USC 1973ff-1(1).

18. As of this time, all ballots for the General Election have already been printed.

19. Currently we estimate that approximately 1,000,500 ballots would need to be reprinted if the State is ordered to reprint the ballots.

20. The printer who handles the printing of the ballots estimates it would take approximately 20 days to reprint all of the ballots.

21. The cost of reprinting all of the ballots would be approximately $490,245.00. This is based on our contract with the vendor that states additional ballots are billed at 49 cents each. The $490,245.00 amount does not include incidental costs such as the costs related to mailing out the new absentee ballots.

22. As of now, voting for the 2004 General Election has already begun. Specifically, the mailing of overseas ballots was initiated on September 28, 2004. Subsequently, the mailing of absentee ballots for non-overseas voters was initiated. Finally, election officials have already begun to receive through the mail voted ballots.

23. The requirements of HRS § 11-113 are reasonable in terms of providing access to the presidential ballot.

24. The two ways a candidate can qualify for inclusion on the general election presidential ballot, by petition or by being designated by a qualified political party, are qualitatively different but both ways help ensure that only candidates who can show more than just a modicum of support are able to be on the ballot. These requirements serve the legitimate interests of avoiding voter confusion and the overcrowding of the ballot.

25. It is my understanding that the Plaintiffs contend that there is no reason for the different signature requirements between getting on the ballot as a recognized political party and as an independent. However, as I noted the two paths are qualitatively different in how they ensure that a candidate has more than just a modicum of support.

26. It is correct that in order to become a political party a significantly smaller amount of signatures are required (677 v. 3711). However, the signatures must be obtained in a significantly shorter amount of time (April 1, 2004 v. September 3, 2004).

27. A group which is able to obtain 677 valid signatures, prior to the election season getting into full swing has established more than a modicum of support in the community for the beliefs and views to espoused by the prospective political party.

28. A group that is not qualified as a political party is required to obtain 3,711 signatures. However, the deadline is September 3, 2004. This deadline comes after the filing deadline for the creation of new political parties, and the deadline for candidates to file nomination papers. The group has the benefit of having the election season be in full swing with the petition being due a little less than two weeks prior to the primary election. As such, the numerical requirement of 3,711 signatures is reasonable under the circumstances.

I, DWAYNE D. YOSHINA, do declare under penalty of law that the foregoing is true and correct.

DATED: Honolulu, Hawaii, October 12, 2004.

_Dwayne D. Yoshina_
DWAYNE D. YOSHINA