ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 17 2008

at _____ o'clock and _____ min. _____ M.
SUE BEITIA, CLERK

MARK J. BENNETT          2672
Attorney General of Hawaii

AARON H. SCHULANER       6954
HOLLY T. SHIKADA         4017
Deputy Attorneys General
235 S. Beretania Street, Room 304
Honolulu, Hawaii 96813
Telephone: (808) 586-1255
Facsimile: (808) 586-1488
E-Mail: Aaron.H.Schulaner@Hawaii.Gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RALPH NADER, PETER MIGUEL CAMEJO, ROBERT H. STIVER, MICHAEL A. PEROUTKA, CHUCK BALDWIN, AND DAVID W. PORTER,<br><br>Plaintiffs,<br><br>vs.<br><br>DWAYNE D. YOSHINA, Chief Election officer, State of Hawaii,<br><br>Defendant. | CIVIL NO. 04-00611 JMS/LEK<br><br>DEFENDANT'S MEMORANDUM IN REPLY AND OPPOSITION TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT; CERTIFICATE OF SERVICE<br><br>HEARING<br>Date: January 28, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. J. Michael Seabright |

268118_2.DOC

DEFENDANT'S MEMORANDUM IN REPLY AND OPPOSITION
TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY
JUDGMENT AND PLAINTIFFS' CROSS-MOTION FOR
SUMMARY JUDGMENT

Plaintiffs in their filing argue incorrectly that the provisions regarding

accessing the presidential ballot are unconstitutional, that it was improper for

Defendant to be the Hearings Officer at the underlying administrative hearings,

and that verification process was flawed.

I.    THE PROVISIONS OF HRS § 11-113 FOR OBTAINING ACCESS TO
      THE PRESIDENTIAL BALLOT ARE CONSTITUTIONAL

It is undisputed that the State of Hawaii has a legitimate interest in avoiding

voter confusion and the overcrowding of the ballot.  Plaintiffs assert that there is

simply no basis for the significantly lower signature requirement to form a political

party versus to run as an independent candidate for President.  Such an argument

assumes that other than the amount of the signatures required, the other

requirements to form a party or to petition to be on the ballot as an independent

candidate are either the same or are not substantively relevant.

The two paths of getting on the presidential ballot (political party or by

petition) are different but both are reasonable and ensure that only candidates who

can show more than a modicum of support are able to be on the ballot.

Specifically, while the number of signatures required for a political party to put

forth a candidate and an independent candidate qualifying by petition, are different, the periods for obtaining the signatures are likewise different. Thus, a group of people is able to qualify as a political party by presenting 677 valid signatures by April 1, 2004 while an independent candidate requires 3,711 but has until September 3, 2004 to obtain the requisite signatures. Such differentiation, it is submitted, is not discriminatory, only different.

It is correct that in order to become a political party a significantly smaller amount of signatures are required (677 v. 3711). However, the signatures must be obtained in a significantly shorter amount of time (April 1, 2004 v. September 3, 2004). Exhibit 14 at ¶ 26 to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (Declaration of Dwayne D. Yoshina).

A group which is able to obtain 677 valid signatures, prior to the election season getting into full swing has established more than a modicum of support in the community for the beliefs and views to espoused by the prospective political party. As such, the numerical requirement of 677 signatures is reasonable under those circumstances. Exhibit 14 at ¶ 27 (Declaration of Dwayne D. Yoshina).

An individual that is not a member of a qualified political party is required to obtain 3,711 signatures. However, the deadline is September 3, 2004. This deadline comes after the filing deadline for the creation of new political parties, and the deadline for candidates to file nomination papers. The individual has the

268118_2.DOC

3

benefit of having the election season be in full swing with the petition being due a little less than two weeks prior to the primary election. As such, the numerical requirement of 3,711 signatures is reasonable under those circumstances. Exhibit 14 at ¶ 28 (Declaration of Dwayne D. Yoshina).

II.    THE CHIEF ELECTION OFFICER WAS THE APPROPRIATE PERSON TO CONDUCT THE HEARINGS REGARDING WHETHER PLAINTIFFS FAILED TO OBTAIN THE REQUISITE AMOUNT OF SIGNATURES FOR PLACEMENT ON THE PRESIDENTIAL BALLOT

Plaintiffs question the appropriateness of the Chief Election Officer conducting the hearings in these cases. Plaintiffs, however, fail to address the fact that the legislature specifically provided for the filing of a hearing with the Chief Election Officer. Additionally, Plaintiffs point to no direct evidence of the Chief Election Officer's alleged bias or lack of impartiality. Finally, Plaintiffs fail to address the doctrine of necessity, given that the Chief Election Officer's jurisdiction is exclusive and there is no provision for a substitute hearings officer.

A.    THE CHIEF ELECTION OFFICER IS STATUTORILY AUTHORIZED TO CONDUCT HEARINGS REGARDING PRESIDENTIAL PETITIONS

Hawaii Revised Statutes §11-113(e) establishes the authority for the Chief Election Officer to conduct hearings on objections to findings of eligibility or disqualification for presidential ballots:

> If the applicant, or any other party, individual, or group with a candidate on the presidential ballot, objects to the finding of eligibility

or disqualification the person may, not later than 4:30 p.m. on the fifth day after the finding, file a request in writing with the chief election officer for a hearing on the question.  A hearing shall be called not later than 4:30 p.m. on the tenth day after the receipt of the request and shall be conducted in accord with chapter 91.  A decision shall be issued not later than 4:30 p.m. on the fifth day after the conclusion of the hearing.

B.    THERE HAS NOT BEEN A SHOWING OF IMPROPRIETY ON THE PART OF THE CHIEF ELECTION OFFICER AND THE JOINDER OF EXECUTIVE AND JUDICIAL POWER DOES NOT CREATE THE APPEARANCE OF IMPROPRIETY

In Sifagaloa v. Board of Trustees of Employees' Retirement System of State of Hawaii, 74 Haw. 181, 840 P.2d 367 (1992), the Court stated that "[a]dministrators serving as adjudicators are presumed to be unbiased."  Sifagaloa, 74 Haw. at 192, 840 P.2d at 372.  The presumption can be rebutted by showing a disqualifying interest, the burden of which rests on the party making the assertion.

In Sifagoloa, the Court found no impropriety where the Board of Trustees of the Employees' Retirement System of the State of Hawaii (Trustees) serves the dual functions of investing Employees' Retirement System (ERS) funds and adjudicating disability retirement cases.  Sifagaloa was a State of Hawaii employee who was injured in a motor vehicle accident within the scope of his employment and subsequently filed for service-connected total disability retirement benefits.  The Medical Board of the ERS submitted its decision to the Trustees, including its finding that although Sifagaloa was incapacitated due to psychological factors,

there was no causal connection between the motor vehicle accident and his physical incapacitation. The Medical Board, therefore, recommended that the Trustees deny Sifagaloa's claim, which they did. Id. at 186, 840 P.2d at 370.

Sifagaloa's recourse was to appeal the Medical Board's decision to the Trustees. At the hearing, the hearing officer heard testimony from a psychiatrist called as a witness by the Medical Board that Sifagaloa suffered from a psychiatrically recognized disorder that was directly caused by the motor vehicle accident. Id. at 187, 840 P.2d at 370. In spite of this testimony, the hearing officer found that there was no psychiatric evidence of a causal connection and recommended that the Trustees affirm the Medical Board's decision, which they did. The circuit court upheld this decision, also finding no evidence in the record that the Trustees should be disqualified. Id. at 188, 840 P.2d at 370

On appeal to the Supreme Court, Sifagaloa argued that he was denied his constitutional right to due process because the Trustees' dual interests of awarding retirement benefits and preserving the ERS fund created a conflict of interest that gave rise to an appearance of impropriety and thus a question of the Trustees' impartiality. Id. at 188, 840 P.2d at 371. The Court emphasized that "[a]n appearance of impropriety does not occur simply where there is a joinder of executive and judicial power." Id. at 191, 840 P.2d at 372. Sifagaloa "failed to

6

overcome the presumption of lack of bias by showing a disqualifying interest on

the Trustees' part." Id. at 193, 840 P.2d at 373.

In the present case, the Chief Election Officer does not have any direct,

personal, or pecuniary interest in denying inclusion on the ballot to the proposed

candidates. The Chief Election Officer has nothing to gain from preventing the

proposed candidates from being on the ballot. He has no interest other than

running a successful operation in his office, including efficient and smooth

elections. (See Wolkenstein v. Reville, 694 F.2d 35, 42 (2nd Cir.(N.Y.), 1982),

where a public servant was found not to have any "official motive" in the

determinations he made because elected officials had to find funds to run his

operation, not he, himself.)  The Chief Election Officer's impartiality is not

reasonably in question, and there is no appearance of impropriety. Plaintiffs have

failed to rebut the presumption that the Chief Election Officer serving as the

hearings officer was unbiased.

In fact, the evidence is clear that the Plaintiffs trust the Chief Election

Officer. The Nader Campaign entered into a settlement agreement with the Office

of Elections in which it agreed to the Chief Election Officer having the final say on

a recount of the signatures. Exhibit 5 (Nader Settlement Agreement).

C.     DOCTRINE OF NECESSITY

Finally, there is a long-recognized "doctrine of necessity" or "rule of necessity," which applies to decision makers at all levels. As stated by the Supreme Court of Hawaii, "Under the doctrine of necessity, an administrative officer exercising a quasi-judicial function can act in a proceeding, when he would otherwise be disqualified, if jurisdiction is exclusive and no provision exists for substitution." (citations omitted) Yamada v. Natural Disaster Claims Commission, 54 Haw. 621, 628, 513 P.2d 1001, 1006 (1973). The Yamada case concerned the proposed disqualification of a member of the Natural Disaster Claims Commission for pecuniary interest, where the Court found the commission member's participation to be proper despite the apparent prohibition by statute.

In another case involving statutory provisions relating to salaries of Supreme Court justices and circuit court judges, the plaintiffs moved to disqualify all members of the Supreme Court from hearing their appeal. In its *per curiam* opinion, the Court stated:

> To give HRS § 601-7(a) [re: disqualification of judges] the effect of disqualifying every member of the judiciary of Hawaii from hearing the present appeal would be to attribute to the legislature the intent to deny any remedy to the present appellants. It has uniformly been held that the rule of necessity prevails over the policy of disqualification for interest, whether or not that policy has been embodied in a statute. (brackets added)

Schwab v. Ariyoshi, 57 Haw. 348, 353, 555 P.2d 1329, 1332 (1976).

268118_2.DOC                                                      8

The Supreme Court also quoted  Wheeler v. Board of Trustees, 200 Ga. 323,

37 S.E.2d 322 (1946):

> The precise question we must now determine is, when all Justices of
> this court are disqualified, and all superior court judges are likewise
> disqualified, thereby resulting in a situation where no qualified court
> can be constituted, what shall be done?  The rule is laid down in 30
> Am. Jur. 770, § 55; 'By the great weight of authority, the rule of
> disqualification must yield to the demands of necessity, and a judge or
> an officer exercising judicial functions may act in a proceeding
> wherein he is disqualified by interest, relationship, or the like, if his
> jurisdiction is exclusive, and there is no legal provision for calling in a
> substitute, so that his refusal to act would destroy the only tribunal in
> which relief could be had and thus prevent a determination of the
> proceeding.  Under such circumstances, it is the duty of the
> disqualified judge to hear and decide the controversy, however
> disagreeable it may be.'  (37 S.E. 2d at 325-26)

Schwab, 57 Haw. at 352, 555 P.2d at 1332.

Thus the Court ruled that the rule of necessity takes precedence and its judges must

hear the case.

More recently, the Supreme Court addressed the alleged "conflict of

interest" created by the legislature when it provided that the chairperson of the

Board of Land and Natural Resources would be the chairperson of the Commission

on Water Source Management, pursuant to HRS § 174C-7, even though the Board

of Land and Natural Resources could be a party to a hearing before the

Commission.  The Supreme Court noted that the legislature had the right to

overrule the common law doctrine of incompatible office.   In the Matter of the

9

Water Use Permit Applications, 94 Haw. 97, 120-21, 9 P.3d 409, 432-33 (2000). In addition, the Supreme Court, further noted that even if disqualification could be shown to be normally appropriate, the rule of necessity would still require him not to be disqualified if his jurisdiction was exclusive and there was no provision for substitution. Id. at 123, 9 P.3d at 435.

The doctrine of necessity also applies in the case at bar. Hawaii Revised Statutes §11-113(e) sets up the Chief Election Officer as the administrator to conduct hearings and does not provide for any other individual to do so. Chapter 91 of the Hawaii Revised Statutes, which is controlling for administrative hearings, does not require that a hearings officer come from outside the department. Therefore, there is no one other than the Chief Election Officer who could conduct the hearing, and the Chief Election Officer, out of necessity must preside at the hearing.

III.    DEFERENCE SHOULD BE GIVEN TO THE HONORABLE SABRINA S. MCKENNA'S DECISION IN WHICH SHE FOUND THAT THE PROCEDURES FOR VERIFYING THE PETITION SIGNATURES WERE FOLLOWED

The law provides for the manner in which it is determined whether an individual is qualified to sign the petition. HAR § 2-51-112. Specifically, the signatory is checked against the statewide voter registration system ("SVRS") to determine if he is an active registered voter. The SVRS allows for voter records to

be pulled up by either social security number or name.  As such, it is critical that signatories comply with the requirement of printing their name in order to avoid illegibility issues, which will result in the record not be being accessible.

After the voter's record is either pulled up by name or social security number, the law provides for the manner in which the signatory will be validated: (1) if the signatory on the petition exists as an active registered voter in the SVRS, then the signatory is counted; (2) if the signatory does not exist as an active registered voter in the SVRS, then the signatory is not counted; (3)  if there are duplicate signatures, and the signatory is an active registered voter, then the signatory is counted once; and  (4) "if the signatory does not provide all of the required information on the petition or if the information is not legible, then the signatory may not be counted."  HAR § 2-51-113(b)(1)-(4).

The Honorable Sabrina S. McKenna found that the procedures of HAR § 2-51-113(b)(1)-(4) were followed in verifying signatures and that in reviewing the record she confirmed that many of the names submitted were not legible and that most signatories did not provide their social security number.  Exhibit A of Exhibit 10 (Peroutka v. Yoshina, Civ. No. 04-1-1904-10 (SSM), Decision of the Court and Order (November 23, 2004)) at pages 3-4,  Exhibit B of Exhibit 10 (Nader v. Yoshina, Civ. No. 04-1-1905-10 (SSM), Decision of the Court and Order (November 23, 2004) at pages 3-4.   Plaintiffs do not directly address the Circuit

268118_2.DOC                              11

Court's decision or the fact that the Court reviewed the underlying administrative record including the actual petitions.

## IV.    THIS MATTER IS MOOT AS THE 2004 PRESIDENTIAL ELECTION HAS ALREADY OCCURRED

Article III of the Constitution restricts federal courts to deciding cases and controversies. In order to qualify for federal court jurisdiction an actual controversy must exist at all stages of the litigation. Arizonans for Official English v. Arizona, 117 S.Ct. 1055, 1067 (1997). A federal court cannot decide issues that cannot affect the rights of the parties before the court. DiGiorgio v. Lee, 134 F.3d 971, 974 (9th Cir. 1998). In this case, the 2004 Presidential Election is over. There is simply no effective relief that can be provided at this point.

In addition, Plaintiffs should not be able to avail themselves of the "capable of repetition, yet evading review," exception to the doctrine of mootness. Plaintiffs chose to file this action on October 8, 2004, merely a month before the hearing and after the deadline for filing their nomination papers. Plaintiffs essentially chose to roll the dice on obtaining enough verified signatures. This case might not have become moot if Plaintiff had simply filed this lawsuit at an earlier time.

268118_2.DOC                                   12

DATED:    Honolulu, Hawaii, January 17, 2008.

_____
AARON H. SCHULANER
HOLLY T. SHIKADA
Deputy Attorneys General

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify, a true and correct copy of the foregoing document was duly served, on this date, upon the following individual(s) in the manner indicated:

ERIC A. SEITZ, ESQ.
LAWRENCE I. KAWASAKI, ESQ.
820 Mililani Street, Suite 714
Honolulu, Hawaii 96813
Ph: 533-7434/Fax: 545-3608
eseitzatty@yahoo.com

[ X ]  HAND-DELIVERY

[   ]  U.S. MAIL

[   ]  FAX

[   ]  E-MAIL

DATED:  Honolulu, Hawaii, January 17, 2008.

AARON H. SCHULANER

268118_2.DOC