# Ballot Access News

*Richard Winger, Editor*
*P.O. Box 470296*
*San Francisco, CA 94147*
*(415) 922-9779*
*www.ballot-access.org*
*ban@richardwinger.com*

CORRESPONDENCE

richardwinger@yahoo.com

Jan. 30, 2008

Hon. J. Michael Seabright
U.S. District Court Judge
300 Ala Moana Blvd #C338
Honolulu Hi 96813

Dear Judge Seabright,

In Nader v Yoshina, Judge David Ezra made a factual error which I discuss on pages 579-580 of the enclosed law journal article.

The Texas statewide independent petition requirement was 1% of the last gubernatorial vote, during the time when American Party of Texas v White was being adjudicated. See the enclosed copies of pages from the Texas Election Laws of 1964 and 1976. The law didn't change between those years, and was identical in both years.

Respectfully yours,

*Richard Winger*

cc: Eric Seitz, Aaron H. Schulaner  (including enclosures)

# TEXAS ELECTION LAWS

INCLUDING POLITICAL CALENDAR, CONSTITUTIONAL PROVISIONS, ELECTION CODE, AND STATUTES

1976-1977 Edition

Compiled by
J. M. PATTERSON, JR.
of the Austin,
Texas Bar

Art. 13.47a

and shall be filed in the same manner and within the time prescribed by that Article, except that it shall request that the candidate's name be placed before the convention instead of requesting that his name be placed on the general primary ballot.

Section 2. A person who has been nominated by a convention may decline the nomination, but he shall not be eligible for nomination by that party to any other office to be voted on at the same election except as a candidate for an unexpired term where the vacancy in office occurred subsequent to the date of the convention at which he was originally nominated.

Section 4. The requirements of Section 1 do not apply to candidates for unexpired terms where the vacancy in office occurs subsequent to the tenth day preceding the regular deadline for filing applications for a place on a primary election ballot as prescribed in Art. 13.12.

**Art. 13.48. Nominations certified.**

Nominations so made by a state convention shall be certified by the chairman of the state executive committee of such party to the Secretary of State. Nominations made by the district convention shall be certified by the chairman of the district executive committee to the Secretary of State. Nominations made by a county convention for county and precinct offices shall be certified by the chairman of the county executive committee to the county clerk, and nominations for district offices shall be certified by said chairman to the Secretary of State. Nominations by party conventions must be certified to the proper officer within twenty days after the date of the convention at which the nomination was made.

**Art. 13.49. Illegal participation.**

No person shall be allowed to participate in any such convention who has participated in the convention or primary of any other party held on the same day.

**Art. 13.50. Nonpartisan or independent candidate.**

Subdivision 1. This section applies to nonpartisan or independent candidates for federal, state, district, county, and precinct offices in the general election provided for in Art. 2.01. A person may run as a nonpartisan or independent candidate for any such office, other than the offices of president, vice president, and presidential elector, by complying with this section and other applicable provisions of this code.

Subdivision 2. (a) As a condition precedent to having a candidate's name printed on the official ballot as an independent candidate under this section, in addition to the application required by Subdivision 3 of this section, the person must file, by the deadline provided in Art. 13.12, a declaration of his intent to run as an independent candidate. The declaration shall state the

244

Art. 13.50

person's name, occupation, county of residence, post office address, age, and the office for which he intends to run, and shall be signed and duly acknowledged by the person desiring to be a candidate. It shall be filed with the officer with whom the application required by Subdivision 3 of this section is filed.

(b) The requirements of Paragraph (a) of this subdivision do not apply to candidates for unexpired terms where the vacancy in office occurs subsequent to the tenth day preceding the regular deadline for filing application for a place on a primary election ballot, as prescribed in Art. 13.12, and do not apply to candidates for any office for which the filing deadline in a primary election is extended under the provisions of Paragraph 2a of Art. 13.12. However, an independent candidate who is not required to file a declaration of intent under Paragraph (a) of this subdivision must file with the secretary of state or the county judge, as the case may be, his written consent to become a candidate, within 30 days after the second primary election day.

Subdivision 3. The name of a nonpartisan or independent candidate may be printed on the official ballot in the column for independent candidates, after a written application signed by qualified voters addressed to the proper officer, as herein provided, and delivered to him within 30 days after the second primary election day, as follows:

If for an office to be voted for throughout the state, the application shall be signed by one per cent of the entire vote of the state cast for Governor at the last preceding gubernatorial general election, and shall be addressed to the Secretary of State.

If for a district office in a district composed of more than one county, the application shall be signed by three per cent of the entire vote cast for Governor in such district at the last preceding gubernatorial general election, and shall be addressed to the Secretary of State.

If for a district office in a district composed of only one county or part of one county, the application shall be signed by five per cent of the entire vote cast for Governor in such district at the last preceding gubernatorial general election, and shall be addressed to the Secretary of State.

If for a county office, the application shall be signed by five per cent of the entire vote cast for Governor in such county at the last preceding gubernatorial general election, and shall be addressed to the county judge.

If for a precinct office, the application shall be signed by five per cent of the entire vote cast for Governor in such precinct at the last preceding gubernatorial general election, and shall be addressed to the county judge.

Notwithstanding the foregoing provisions, the number of signatures required on an application for any district, county, or precinct office need not exceed 500.

Subdivision 4. No application shall contain the name of more

245

# TEXAS ELECTION LAWS

INCLUDING POLITICAL CALENDAR, CONSTITUTIONAL PROVISIONS, ELECTION CODE, CIVIL AND CRIMINAL STATUTES

1963-1964 Edition

Compiled by
J. M. PATTERSON, JR.
of the Austin,
Texas Bar

ODE

day in May of the election
thereto from the counties
conventions held on the

offices and for district
county or part of one
ventions held on the sec-

inated by a convention.

by any state, district,
13.45, 13.46 and
the chairman of the
requesting that
a candidate for
the requirements
Statutes,
the time pre-
request that the
convention instead of
general primary ballot.
ated by a convention may
ot be eligible for nomina-
o be voted on at the same
expired term where the
the date of the conven-

candidate's name
Article 13.53
of those
written
acknowl-
on the ballot
office address.
The affidavit
Article 13.12 of

hereof shall not
the vacancy in
ceding the deadline

tion shall be certified
mittee of such party
ade by a district con-
the district executive
Nominations made by
offices shall be certified

ELECTION CODE    157

by the chairman of the county executive committee to the county clerk, and nominations for district offices shall be certified by said chairman to the Secretary of State. Nominations by party conventions must be certified to the proper officer within twenty days after the date of the convention at which the nomination was made.

Art. 13.49.  **Illegal participation.**

No person shall be allowed to participate in any such convention who has participated in the convention or primary of any other party held on the same day.

Art. 13.50.  **Nonpartisan or independent candidate.**

The name of a nonpartisan or independent candidate may be printed on the official ballot in the column for independent candidates, after a written application signed by qualified voters addressed to the proper officer, as herein provided, and delivered to him within thirty days after the second primary election day, as follows:

If for an office to be voted for throughout the state, the application shall be signed by one per cent of the entire vote of the state cast for Governor at the last preceding general election, and shall be addressed to the Secretary of State.

If for a district office in a district composed of more than one county, the application shall be signed by three per cent of the entire vote cast for Governor in such district at the last preceding general election, and shall be addressed to the Secretary of State.

If for a district office in a district composed of only one county or part of one county, the application shall be signed by five per cent of the entire vote cast for Governor in such district at the last preceding general election, and shall be addressed to the Secretary of State.

If for a county office, the application shall be signed by five per cent of the entire vote cast for Governor in such county at the last preceding general election, and shall be addressed to the county judge.

If for a precinct office, the application shall be signed by five per cent of the entire vote cast for Governor in such precinct at the last preceding general election, and shall be addressed to the county judge.

Notwithstanding the foregoing provisions, the number of signatures required on an application for any district, county, or precinct office need not exceed five hundred.

No application shall contain the name of more than one candidate. No person shall sign the application of more than one candidate for the same office; and if any person signs the application of more than one candidate for the same office, the signature

Case 1:04-cv-00611-ACK-LEK    Document 67    Filed 02/05/2008    Page 6 of 7

candidates, than for new parties.[107] Each case also contained a second distinct claim, that it is unconstitutional for a state to require more signatures for an independent presidential candidate than for independent candidates for other statewide office. Under all prior rulings, these cases should have been successful, but they were not.[108] Nader failed to get injunctive relief in Hawaii,[109] and in Texas, he lost both injunctive and declaratory relief.[110]

In Hawaii, an independent candidate for president in 2004 needed 3711 signatures.[111] A new party (entitled to its own primary, and the ability to nominate someone for every partisan office in the state) only needed 677 signatures.[112] An independent candidate for statewide office other than president only needed 25 signatures.[113] Nader believed he submitted more than 3711 valid signatures, but the state Elections Office ruled against him. Even though Nader's campaign believed it proved that the state was wrong, it failed to gain any relief in state administrative proceedings on that claim. So, it filed a federal lawsuit alleging that it is unconstitutional to require so many more signatures for Nader than for an independent candidate for other statewide office, or an entire new party. Every precedent was on Nader's side.[114]

But the district court in Hawaii denied injunctive relief on the grounds that, as the court read it, *American Party of Texas v. White*, compelled a different result. Texas, in 1972, had required a petition signed by one percent of the last gubernatorial vote to place a new party on the statewide ballot.[115] Alternatively, a new party could qualify in just a single county (if it could not qualify state-

---

107. See the discussion of Nader v. Connor, 388 F. Supp. 2d 982 (W.D. Tex. 2004), *supra* Part II. The Hawaii case is *Nader v. Yoshina*, CV04-611 (D. Hi. Oct. 13, 2004).

108. Greaves v. State Bd. of Elections, 508 F. Supp. 78 (E.D.N.C. 1980); DeLaney v. Bartlett, No. 1:02CV00741 (M.D.N.C. July 26, 2004) (on file with author); Cromer v. South Carolina, 917 F.2d 819 (4th Cir. 1990); Danciu v. Glisson, 302 So. 2d 131 (Fla. 1974); Patton v. Camp, No. 92V-885-N (M.D. Al. Aug. 31, 1992) (on file with author).

109. Nader v. Yoshina, No. CV-04-00611 (D. Hi. Oct. 13, 2004).

110. Nader v. Connor, 332 F. Supp. 2d 982 (W.D. Tx. 2004), *aff'd*, 388 F.3d 137 (5th Cir. 2004).

111. Haw. Rev. Stat. § 11-113(c)(2)(B) (2004) (providing that independent presidential candidates need a petition signed by one percent of the last presidential vote cast).

112. Haw. Rev. Stat. § 11-62 (explaining that a new party needs signatures of one-tenth of one percent of the number of registered voters).

113. Haw. Rev. Stat. § 12-3.

114. For a list of these precedents, *see* Delaney v. Bartlett, 370 F. Supp. 2d 373, at 380-81 (M.D.N.C. 2004).

115. 415 U.S. 767, 774-76 nn.6-7 (1974) (describing the Texas ballot access laws for minor parties and independent candidates).

wide, or did not wish to) with a petition signed by three percent of the last gubernatorial vote within that county. A new party could not qualify in a single congressional or legislative district.

Also in Texas in 1972, an independent candidate for statewide office, even president, needed a petition of one percent of the last gubernatorial vote. Independent candidates for district office needed a petition signed by three percent of the last gubernatorial vote, if the district encompassed more than a single county. Independent candidates for district office within a single county needed a petition of five percent of the last gubernatorial vote in that district. No independent candidate for any district or county office, however, ever needed more than 500 signatures.

The district court in Hawaii misread *American Party of Texas v. White*. The Hawaii court wrote,

> In *American Party of Texas*, the Supreme Court determined that the requirement of the notarized signatures of one percent of the total gubernatorial votes at the last preceding general election for minority parties and three percent or five percent for independent candidates were not impermissible burdens on the First and Fourteenth Amendment.

The Hawaii court seemed to believe that a new party in Texas needed a one percent petition for statewide office, whereas an independent candidate for statewide office needed a three percent or five percent petition. This is factually wrong. Statewide independent candidates, and new parties, needed an identical number of signatures.[116] The fact that district independents needed three percent or five percent, but never more than 500, does not show that Texas was discriminating against independent candidates, because minor parties could not even qualify in just a single congressional or legislative district. If any group was discriminated against in Texas in 1972, it was minor parties, not independent candidates.

The Hawaii court failed to acknowledge the most important precedent of all, *Illinois State Board of Elections v. Socialist Workers*

---

116. When *American Party of Texas* was filed in 1972, Texas required the same deadline and number of signatures for minor parties, independent presidential candidates, and independent candidates for other statewide office. *See id.* (citing Tex. Elec. Code §§ 13.45 (for new parties), 13.50 (for all independent candidates)). In 1975, Texas repealed all procedures for independent presidential candidates to get on the ballot, an action criticized by the Supreme Court in *McCarthy v. Briscoe*, 429 U.S. 1317 (1976). When Texas restored such procedures in 1977, the restored procedures for independent presidential candidates were, for the first time, more restrictive than the procedures for new party and non-presidential independent statewide independent.