MARK J. BENNETT         2672
Attorney General of Hawaii

AARON H. SCHULANER      6954
HOLLY T. SHIKADA        4017
Deputy Attorneys General
235 S. Beretania Street, Room 304
Honolulu, Hawaii 96813
Telephone: (808) 586-1255
Facsimile: (808) 586-1488
E-Mail: aaron.h.schulaner@hawaii.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RALPH NADER, PETER MIGUEL CAMEJO, ROBERT H. STIVER, MICHAEL A. PEROUTKA, CHUCK BALDWIN, AND DAVID W. PORTER,<br><br>Plaintiffs,<br><br>vs.<br><br>KEVIN B. CRONIN, Chief Election officer, State of Hawaii,<br><br>Defendant. | CIVIL NO. 04-00611 ACK-LEK<br><br>DEFENDANT'S TRIAL BRIEF; CERTIFICATE OF SERVICE<br><br><br><br>Trial: March 4, 2008<br>Time: 9:00 a.m.<br>Judge: Hon. Alan C. Kay |

DEFENDANT'S TRIAL BRIEF

272482_9.DOC

I.  BACKGROUND

During election year 2004, the Office of Elections was headed by Chief Election Officer Dwayne D. Yoshina. The Office of Elections was composed of various sections including a ballot operations section which was headed by Ms. Lori Tomczyk. Responsibility for verifying the petitions for inclusion on the presidential ballot was given to Ms. Tomczyk. Chief Election Officer Dwayne D. Yoshina was not directly involved in the verification process.

A. THE PEROUTKA PETITION PROCESS UP TO THE DATE OF THE FILING OF THE PETITION

On May 4, 2004, Plaintiff David Porter, the Hawaii Coordinator for the Peroutka for President 2004 Campaign, filled out a form entitled "An Application for Petition to Place the Names of Candidates for President and Vice President on the State of Hawaii General Election Ballot." Plaintiff Porter was provided with information regarding what was necessary for purposes of verifying the petition signatures by Ballot Operations Section Head Lori Tomczyk. This information consisted of a ten page fact sheet regarding the petition process, including copies of the applicable statutes and administrative rules.

Plaintiff Porter was issued initial petition sets that day. Each petition set consists of 4 pages and a total 48 rows for petition signatures. The Application for Petition included a "For Office Use Only" section in which the Office of Election

staff would notate when petition forms were issued to the Peroutka Campaign and when they were received from the Peroutka Campaign.

The Office of Elections received its first group of petition sets from the Peroutka Campaign on July 15, 2004, consisting of 13 petition sets. The signatures were reviewed and verified them against the Statewide Voter Registration System (SVRS). At the conclusion of the review of the petition sets submitted on July 15, 2004, Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, which he signed without any changes.

The letter indicated that a total of 606 signatures were found in the 13 petition sets submitted by Plaintiff Porter. Of the 606 signatures, 299 were found to be listed as "Active" (currently registered) in the SVRS, 35 were found to be listed as "Inactive" in the SVRS, 67 could not be verified because information on the petition was insufficient (i.e., no social security number, date of birth, signature, or could not read the record), 146 did not appear in the SVRS, 59 could not be verified because the address information on the petition did not match the address information in the SVRS, and 0 were found to have appeared twice on the petition.

The letter, dated July 29, 2004, containing the above referenced information was picked up by Plaintiff Porter, personally, from the Office of Elections on July

30, 2004. Plaintiffs Porter also picked up petition sets on that date and August 6, 2004.

Petition sets were received by the Office of Elections on July 30, 2004, August 6, 2004, and August 13, 2004. The signatures were reviewed and verified against the SVRS. At the conclusion of the review of the petition sets submitted on July 30, 2004, August 6, 2004, and August 13, 2004, Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, which was ultimately signed on his behalf by Office of Elections' employee Robynn Yokooji, without any changes. The letter was dated August 24, 2004 and was sent by certified mail return receipt requested. The letter indicated that as of August 13, 2004, a total of 2,077 signatures had been submitted and 1,039 were found to be valid. The letter provided a breakdown as the previous letter had of the amount of signatures that had been received, and how many had been found to be valid or invalid and the reasons why. The letter also indicated that the deadline for the filing of the petition was still September 3, 2004.

Plaintiff Porter dropped off additional petition sets on August 30, 2004, August 31, 2004, and finally filed the Peroutka Campaign petition on September 3, 2004. The additional petition sets were again reviewed following the procedures established by HRS § 11-113 and its implementing administrative rules.

B.  THE NADER PETITION PROCESS UP TO
THE DATE OF THE FILING OF THE PETITION

On July 16, 2004, Plaintiff Robert H. Stiver, the Hawaii Coordinator for the Nader Campaign, signed a form entitled "An Application for Petition to Place the Names of Candidates for President and Vice President on the State of Hawaii General Election Ballot." Plaintiff Stiver was provided with information regarding what was necessary for purposes of verifying the petition signatures by Ms. Tomczyk. This information consisted of a ten page fact sheet regarding the petition process, including copies of the applicable statutes and administrative rules.

Plaintiff Stiver was issued initial petition sets that day. The Application for Petition included a "For Office Use Only" section in which the Office of Election staff would notate when petition forms were issued to the Nader Campaign and when they were received from the Nader Campaign.

The Office of Elections received its first group of petition sets from the Nader Campaign on July 26, 2004. The signatures were reviewed and verified them against the State Wide Voter Registration System. At the conclusion of the review of the petition sets submitted on July 26, 2004, Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, which he signed without any changes.

The letter indicated that a total of 89 signatures were found in the petition sets submitted by Plaintiff Stiver. Of the 89 signatures, 52 were found to be listed as "Active" (currently registered) in the SVRS, 2 were found to be listed as "Inactive" in the SVRS, 7 could not be verified because information on the petition was insufficient (i.e., no social security number, date of birth, signature, or could not read the record), 25 did not appear in the SVRS, 2 could not be verified because the address information on the petition did not match the address information in the SVRS, and 1 provided a name on the petition which was different from the name indicated on the SVRS. The letter, dated August 2, 2004, containing the above referenced information was sent by certified mail return receipt requested.

Other than providing one petition set on July 30, 2004, the Nader Campaign did not provide petition sets until August 27, 2004, August 30, 2004, September 2, 2004, and finally on September 3, 2004, which was the deadline for filing of its petition.

C. EVENTS SUBSEQUENT TO THE FILING OF THE PEROUTKA AND NADER PETITIONS

On September 20, 2004, the Office of Elections informed Mr. Porter and Mr. Stiver that their respective campaigns had failed to obtain the necessary amount of valid signatures. Subsequently, after proofing its calculations, on September 24,

2004, the Office of Elections informed both campaigns of the revised amount of signatures each had obtained.

On September 23, 2004, the Nader Campaign requested a Chapter 91 hearing. The Nader hearing commenced on September 29, 2004. Prior to the conclusion of the hearing, the Office of Elections and the Nader Campaign entered into a settlement agreement. On October 1, 2004, the Chief Election Officer approved the Nader Settlement Agreement, which provides that the signatures on the petition submitted by the Nader Campaign would be reviewed again in the presence of a Nader representative. During the review, the Nader representative would be allowed to flag the signatures he believed should have been counted. Finally, pursuant to the Nader Settlement Agreement, the Chief Election Officer would subsequently review the challenged signatures and his decision would be final.

On September 24, 2004, the Peroutka Campaign requested a Chapter 91 hearing. The hearing took place on September 30, 2004 and the Chief Election Officer issued his decision on October 5, 2004. In the Peroutka Decision, the Chief Election Officer concluded that the Peroutka Campaign submitted an insufficient amount of valid signatures and, therefore, Michael A. Peroutka and Chuck Baldwin were not eligible to be placed on the presidential ballot.

On September 28, 2004, election officials began mailing out overseas ballots in order to provide overseas voters sufficient time to receive, vote, and return ballots by mail to the election officials by the date of the election. The mail out was done on this date in order to comply with the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) 42 USC 1973ff et seq. UOCAVA requires each State to "permit absent uniformed service voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 USC § 1973ff-1(1).

On October 8, 2004, Plaintiffs filed the present lawsuit taking issue with the constitutionality of the State's requirements that (1) independent candidates for president must obtain more signatures than a candidate from a recognized political party and (2) the verification procedures of the Office of Elections.

On October 11, 2004, Plaintiffs filed their Motion for Preliminary Injunction and on October 12, 2004 Plaintiffs filed their Motion for Temporary Restraining Order. Defendant filed its Memorandum in Opposition to the motions on October 12, 2004. On October 13, 2004, the Honorable David Alan Ezra denied Plaintiff's Motions for Temporary Restraining Order/Preliminary Injunction.

On October 18, 2004, the Chief Election Officer issued his findings that the Nader Campaign had failed to obtain the requisite amount of valid signatures required by Hawaii Revised Statutes § 11-113. On October 18, 2004, Plaintiffs

filed appeals in Circuit Court regarding the determination that both the Nader and Peroutka Campaigns had failed to obtain the requisite amount of valid signatures to be placed on the ballot. Nader, et al. v. Yoshina, Civ. No. 04-1-1905-10 SSM and Peroutka, et al. v. Yoshina, Civ. No. 04-1-1904-10 SSM.

The Honorable Sabrina S. McKenna heard both cases on November 1, 2004. She orally affirmed the underlying administrative decisions that same day. The General Election occurred on November 2, 2004. The written decisions of the Court for both cases were issued on November 23, 2004. Final judgment in both cases was filed on April 5, 2005.

A joint notice of appeal was filed on April 13, 2005. The Peroutka appeal was assigned Supreme Court No. 27233 and the Nader Appeal was assigned Supreme Court No. 27234. The Supreme Court of Hawaii consolidated the two cases for purposes of briefing and disposition under Supreme Court No. 27233. Appellant's Joint Opening Brief was filed on July 22, 2005. The briefing was completed on October 11, 2005, and the case is still pending before the Court.

On July 13, 2005, Defendant filed a motion to dismiss based on the Younger abstention doctrine, given the pending Hawaii Supreme Court cases. Plaintiffs filed their memorandum in opposition on September 25, 2005. On October 6, 2005, the present case was reassigned to the Honorable J. Michael Seabright. A hearing on Defendant's motion was held on October 13, 2005. The parties orally

agreed at that time to stipulate to staying the proceedings until the resolution of appeals before the Hawaii Supreme Court. A formal stipulation was submitted and granted on October 28, 2005 staying the proceedings.

On March 31, 2006, the Court, in order to avoid leaving the motion unresolved for an extended period of time, denied without prejudice Defendant's Motion to Dismiss. Given the significant delay in obtaining a decision from the Hawaii Supreme Court, on November 1, 2007, during a status conference, the Court lifted the stay. On November 13, 2007, the parties met with the Honorable Leslie E. Kobayashi for purposes of setting a new trial date. A bench trial was set for March 4, 2008.

On December 4, 2007, Defendant's filed its Motion to Dismiss or in the Alternative for Summary Judgment. Plaintiffs filed its Memorandum in Opposition and a Cross-Motion for Summary Judgment on January 10, 2008. On January 17, 2008, Defendant filed its Reply and Memorandum in Opposition to Plaintiffs' Cross-Motion for Summary Judgment.

Ultimately, the Honorable J. Michael Seabright issued his Order disposing of the motions on February 7, 2008. The Court granted summary judgment as to Count I of the Complaint, finding that the petition requirements of HRS § 11-113 were constitutional. As for Count II of the Complaint the Court denied Plaintiff's motion for summary judgment.

On February 12, 2008, the present matter was reassigned to the Honorable Alan C. Kay. The parties' final witness lists and a stipulation regarding the authenticity and admissibility of exhibits were filed that same day.

II. DISCUSSION

The present matter focuses solely on Count II of the Complaint which alleges, in part, that Defendant "arbitrarily and capriciously failed and/or refused to count and/or consider the names of valid signatories on the petitions presented by Plaintiffs." Complaint at ¶ 22. Given that this is essentially an attempt at a federal appeal of a state administrative hearing, Defendant cites for the Court's consideration the arbitrary and capricious standard as used in the context of the Administrative Procedure Act.

> "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n. of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Courts reviewing whether an agency action was arbitrary and capricious are limited to deciding whether there has been a clear error of judgment and whether the agency action was based upon consideration of the relevant factors. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Deference to an agency's technical expertise and experience is particularly warranted with respect to questions involving engineering and scientific matters. Cf. *Lara v. Secretary of Interior*, 820 F.2d 1535, 1542 (9th Cir.1987) (deferring to agency's expertise in determining what constitutes a mineral discovery).

U.S. v. Alpine Land and Reservoir Co., 887 F.2d 207, 213 (9th Cir. 1989).

A. THE OFFICE OF ELECTIONS CORRECTLY REVIEWED THE PETITIONS IN ACCORDANCE WITH HRS § 11-113 AND ITS IMPLEMENTING ADMINISTRATIVE RULES

Plaintiffs contend that the Office of Elections was arbitrary and capricious in the manner in which they reviewed the petition signatures. However, a closer look at their arguments shows they take issue with the requirements of HRS § 11-113 and its implementing administrative rules, despite the fact that the Court has already found HRS § 11-113 to be constitutional.

The law provides that the petition shall be upon a form prescribed and provided by the Chief Election Officer. HRS § 11-113. The form is prescribed by the Chief Election Officer through administrative rule HAR § 2-51-110. The form contains the following columns for the voter to fill out (1) "Print Your Name Here," (2) "Sign the Name Under Which You Are Registered to Vote," (3) "Print the Residence Address at Which You are Registered to Vote," (4) "Birth Date," and (5) "Date Signed." There is additionally a column for the voter's "Social Security Number," however completing this column is optional. The signatory is required to provide all of the relevant information in order to verify the identity of the signature as a currently registered voter.

The law provides for the manner in which it is determined whether an individual is qualified to sign the petition. HAR § 2-51-112. Specifically, the signatory is checked against the SVRS to determine if he is an active registered

voter. The SVRS allows for voter records to be pulled up by either social security number or name. As such, it is critical that signatories comply with the requirement of printing their name in order to avoid illegibility issues, which will result in the record not be being accessible.

After the voter's record is either pulled up by name or social security number, the law provides for the manner in which the signatory will be validated: (1) if the signatory on the petition exists as an active registered voter in the SVRS, then the signatory is counted; (2) if the signatory does not exist as an active registered voter in the SVRS, then the signatory is not counted; (3) if there are duplicate signatures, and the signatory is an active registered voter, then the signatory is counted once; and (4) "if the signatory does not provide all of the required information on the petition or if the information is not legible, then the signatory may not be counted." HAR § 2-51-113(b)(1)-(4).

These were the procedures that were followed by the Office of Elections in reviewing the petition sets. Plaintiff takes issue with the Office of Elections insistence on following these administrative rules. Essentially, the Office of Elections has a responsibility to only count petition signatures of currently registered voters. These administrative rules are a reasonable attempt to create a system in which the integrity of the petition process is respected in ensuring that only the signatures of currently registered voters are counted. Despite the fact that

it is Plaintiffs who have the burden of establishing that they have provided the signatures of currently registered voters, Plaintiffs instead wish for the Office of Elections to prove that the signatures should not be counted even when the signatory does not provide the information required by law.

    B.    THERE HAS NOT BEEN A SHOWING OF IMPROPRIETY ON THE PART OF THE CHIEF ELECTION OFFICER AND THE JOINDER OF EXECUTIVE AND JUDICIAL POWER DOES NOT CREATE THE APPEARANCE OF IMPROPRIETY

In Sifagaloa v. Board of Trustees of Employees' Retirement System of State of Hawaii, 74 Haw. 181, 840 P.2d 367 (1992), the Court stated that "[a]dministrators serving as adjudicators are presumed to be unbiased." Sifagaloa, 74 Haw. at 192, 840 P.2d at 372. The presumption can be rebutted by showing a disqualifying interest, the burden of which rests on the party making the assertion.

In the present case, the Chief Election Officer does not have any direct, personal, or pecuniary interest in denying inclusion on the ballot to the proposed candidates. The Chief Election Officer has nothing to gain from preventing the proposed candidates from being on the ballot. He has no interest other than running a successful operation in his office, including efficient and smooth elections. (See Wolkenstein v. Reville, 694 F.2d 35, 42 (2nd Cir.(N.Y.), 1982), where a public servant was found not to have any "official motive" in the determinations he made because elected officials had to find funds to run his

operation, not he, himself.) The Chief Election Officer's impartiality is not reasonably in question, and there is no appearance of impropriety. Plaintiffs have failed to rebut the presumption that the Chief Election Officer serving as the hearings officer was unbiased.

In fact, the evidence is clear that the Plaintiffs trust the Chief Election Officer. The Nader Campaign even entered into a settlement agreement with the Office of Elections in which it agreed to the Chief Election Officer having the final say on a recount of the signatures.

III.  CONCLUSION

For the reasons set forth above and the evidence to be presented, Defendant submits that he will be entitled to judgment in his favor.

DATED:   Honolulu, Hawaii, February 19, 2008.

_____
AARON H. SCHULANER
HOLLY T. SHIKADA
Deputy Attorneys General

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify, a true and correct copy of the foregoing document was duly served, on this date, upon the following individual(s) in the manner indicated:

| | |
|---|---|
| ERIC A. SEITZ, ESQ.<br>LAWRENCE I. KAWASAKI, ESQ.<br>820 Mililani Street, Suite 714<br>Honolulu, Hawaii 96813<br>Ph: 533-7434/Fax: 545-3608<br>eseitzatty@yahoo.com | [ X ] HAND-DELIVERY<br>[ ] U.S. MAIL<br>[ ] FAX<br>[ ] E-MAIL |

DATED: Honolulu, Hawaii, February 19, 2008.

*/s/ Aaron H. Schulaner*

AARON H. SCHULANER

272482_9.DOC