**ORIGINAL**

MARK J. BENNETT        2672
Attorney General of Hawai'i

AARON H. SCHULANER    6954
HOLLY T. SHIKADA       4017
Deputy Attorneys General
235 S. Beretania Street, Room 304
Honolulu, Hawai'i 96813
Telephone: (808) 586-1255
Facsimile: (808) 586-1488
E-mail: aaron.h.schulaner@hawaii.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 28 2008

at 11 o'clock and 17 min. A.M.
SUE BEITIA, CLERK

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| RALPH NADER, PETER MIGUEL CAMEJO, ROBERT H. STIVER, MICHAEL A. PEROUTKA, CHUCK BALDWIN, and DAVID W. PORTER,<br><br>Plaintiffs,<br><br>vs.<br><br>KEVIN B. CRONIN, Chief Election Officer, State of Hawai'i,<br><br>Defendant. | Civil No. 04-00611 ACK/LEK<br><br>STIPULATION REGARDING FACTS<br><br><br><br><br><br>TRIAL: March 4, 2008 |

STIPULATION REGARDING FACTS

Plaintiffs Ralph Nader, Peter Miguel Camejo, Robert H. Stiver, Michael A. Peroutka, Chuck Baldwin, and David W. Porter, by and through their attorneys, Eric A. Seitz and Lawrence I. Kawasaki, and Defendant Kevin B. Cronin, by and

273213_3.DOC

through his attorneys, Mark J. Bennett, Attorney General of Hawai`i, and his undersigned deputies, hereby submit the following Stipulation Regarding Facts, pursuant to this Court's Order Regarding Pretrial Deadlines, filed on January 28, 2008.

The parties stipulate to the following facts to used at trial:

*GENERAL BACKGROUND REGARDING THE PETITION PROCESS*

1. During election year 2004, the Office of Elections was headed by Chief Election Officer Dwayne D. Yoshina. (Testimony of Lori Tomczyk)

2. The Office of Elections was composed of various sections including a ballot operations section which was headed by Ms. Lori Tomczyk. (Testimony of Lori Tomczyk)

3. Responsibility for verifying the petitions of prospective presidential candidates for inclusion on the general election ballot was delegated to Ms. Tomczyk. (Testimony of Lori Tomczyk)

4. Chief Election Officer Dwayne D. Yoshina was not involved in the verification process. (Testimony of Lori Tomczyk)

5. In order for individuals to qualify for inclusion on the general election presidential ballot as president and vice president, the individuals must either be designated by a qualified political party or the individuals must petition to be on the presidential ballot. HRS § 11-113(c)(1) & (2).

6. The Chief Election Officer is statutorily authorized to promulgate administrative rules and regulations to carry out the election laws he is responsible for carrying out. HRS § 11-4.

7. The Chief Election Officer promulgated Hawaii Administrative Rules (HAR) §§ 2-51-110 through 2-51-113 to address the requirements of HRS § 11-113.

8. The law provides that the petition shall contain the signatures of currently registered voters, which constitute not less than one per cent of the votes cast in the State at the last presidential election. HRS § 11-113.

9. In the 2000 presidential election, 371,033 votes were cast in Hawaii. As such the signature requirement is 3,711 for the 2004 presidential petition. (Testimony of Lori Tomczyk)

10. The law also provides that the petition shall be upon a form prescribed and provided by the Chief Election Officer. HRS § 11-113.

11. The form is prescribed by the Chief Election Officer through administrative rule HAR § 2-51-110.

12. The form contains the following columns for the voter to fill out (1) "Print Your Name Here," (2) "Sign the Name Under Which You Are Registered to Vote," (3) "Print the Residence Address at Which You are Registered to Vote," (4) "Birth Date," and (5) "Date Signed." There is additionally a column for the voter's

"Social Security Number," however completing this column is optional. The signatory is required to provide all of the relevant information in order to verify the identity of the signature as a currently registered voter. (Testimony of Lori Tomczyk and Appendix H to HAR § 2-51-110).

13. The law provides for the manner in which it is determined whether an individual is qualified to sign the petition. HAR § 2-51-112. Specifically, the signatory is checked against the statewide voter registration system (SVRS) to determine if he is an active registered voter. The SVRS allows for voter records to be pulled up by either social security number or name. (Testimony of Lori Tomczyk)

14. After the voter's record is either pulled up by name or social security number, the law provides for the manner in which the signatory will be validated: (1) if the signatory on the petition exists as an active registered voter in the SVRS, then the signatory is counted; (2) if the signatory does not exist as an active registered voter in the SVRS, then the signatory is not counted; (3) if there are duplicate signatures, and the signatory is an active registered voter, then the signatory is counted once; and (4) "if the signatory does not provide all of the required information on the petition or if the information is not legible, then the signatory may not be counted." HAR § 2-51-113(b)(1)-(4).

*PEROUTKA CAMPAIGN*

15. Aspiring presidential candidate Plaintiffs Michael A. Peroutka and his vice presidential running mate Chuck Baldwin were not designated by a qualified political party and thus needed to petition to be placed on the general election ballot. (Testimony of Lori Tomczyk)

16. Plaintiff David W. Porter on behalf of Plaintiffs Peroutka and Baldwin acted as their representative in the State of Hawaii in regards to the petition process. (Testimony of Lori Tomczyk and Joint Exhibit 13-Application)

17. On May 4, 2004, Plaintiff David Porter, the Hawaii Coordinator for the Peroutka for President 2004 Campaign (Peroutka Campaign), filled out a form entitled "An Application for Petition to Place the Names of Candidates for President and Vice President on the State of Hawaii General Election Ballot." (Testimony of Lori Tomczyk and Joint Exhibit 13-Application)

18. Plaintiff Porter was provided with information regarding what was necessary for purposes of verifying the petition signatures by Ballot Operations Section Head Lori Tomczyk. (Testimony of Lori Tomczyk and Joint Exhibit 25-Factsheet)

19. This information consisted of a ten page factsheet regarding the petition process. (Testimony of Lori Tomczyk and Joint Exhibit 25-Factsheet)

20. Ms. Tomczyk additionally provided Plaintiff Porter a copy of the Election Laws of Hawaii booklet which contains provisions of the United States

Constitution, Hawaii State Constitution, Hawaii Revised Statutes, Hawaii Administrative Rules, and County Charters related to elections. This included HRS § 11-113 and HAR §§ 2-51-110 through 2-51-113. (Testimony of Lori Tomczyk)

21. In reviewing the factsheet and the petition form, Ms. Tomczyk brought to his attention page 5 of the factsheet which provided 7 instructions for correctly completing the petition form. (Testimony of Lori Tomczyk and Joint Exhibit 25-Factsheet)

22. Ms. Tomczyk emphasized as part of her discussion with Plaintiff Porter, consistent with the factsheet, that the petition can only be verified on the basis of the information contained on it, given that the information is compared with the information contained in the official voter register. She explained that if signatory provides information that is illegible or inconsistent with the information in the official voter register, this may result in the signature not being counted. She explained that this could involve the signatory providing an incorrect address, social security number, or date of birth, and that this may result from illegible handwriting or a signatory transposing numbers. (Testimony of Lori Tomczyk and Joint Exhibit 25-Factsheet)

23. In addition, Ms. Tomczyk emphasized that the signatory's social security number or date of birth would be needed to distinguish among people having identical names and/or addresses. (Testimony of Lori Tomczyk and Joint Exhibit 25-Factsheet)

24. Plaintiff Porter was issued initial petition sets that day. Each petition set consisted of 4 pages and a total 48 rows for petition signatures. (Testimony of Lori Tomczyk and Joint Exhibit 23-Petition)

25. The Application for Petition included a "For Office Use Only" section in which the Office of Election staff would notate when petition forms were issued to the Peroutka Campaign and when they were received from the Peroutka Campaign. (Testimony of Lori Tomczyk and Joint Exhibit 13-Application)

26. The Office of Elections received its first group of petition sets from the Peroutka Campaign on July 15, 2004. (Testimony of Lori Tomczyk and Joint Exhibit 13-Application)

27. The signatures were reviewed and verified against the Statewide Voter Registration System (SVRS) in accordance with the applicable administrative rules. (Testimony of Lori Tomczyk)

28. At the conclusion of the review of the petition sets submitted on July 15, 2004, Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, which he signed without any changes. Ms. Tomczyk initials

"LPT" are listed in the lower left hand corner of the last page of the letter. (Testimony of Lori Tomczyk and Joint Exhibit 14-Letter)

29.   The letter indicated that a total of 606 signatures were found in the petition sets submitted by Plaintiff Porter. Of the 606 signatures, 299 were found to be listed as "Active" (currently registered) in the SVRS, 35 were found to be listed as "Inactive" in the SVRS, 67 could not be verified because information on the petition was insufficient (i.e., no social security number, date of birth, signature, or could not read the record), 146 did not appear in the SVRS, 59 could not be verified because the address information on the petition did not match the address information in the SVRS, and 0 were found to have appeared twice on the petition. (Testimony of Lori Tomczyk and Joint Exhibit 14-Letter)

30.   The letter, dated July 29, 2004, containing the above referenced information was picked up by Plaintiff Porter, personally, from the Office of Elections on July 30, 2004. (Testimony of Lori Tomczyk and Joint Exhibit 14-Letter)

31.   Petition sets were received by the Office of Elections on July 30, 2004, August 6, 2004, and August 13, 2004. (Testimony of Lori Tomczyk and Joint Exhibit 13-Application)

32.   The signatures were reviewed and verified against the SVRS in accordance with the applicable administrative rules. At the conclusion of the

review of the petition sets submitted on July 30, 2004, August 6, 2004, and August 13, 2004, Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, which was ultimately signed on his behalf by Office of Elections' employee Robynn Yokooji, without any changes. Ms. Tomczyk initials "LPT" are listed in the lower left hand corner of the last page of the letter. (Testimony of Lori Tomczyk and Joint Exhibit 15-Letter)

33. The letter was dated August 24, 2004 and was sent by certified mail return receipt requested. The letter indicated that as of August 13, 2004, a total of 2,077 signatures had been submitted of which 1,039 were found to be valid. The letter provided a breakdown as the previous letter had of the amount of signatures that had been received, and how many had been found to be valid or invalid and the reasons why. As a reminder, the letter also indicated that the deadline for the filing of the petition was September 3, 2004. (Testimony of Lori Tomczyk and Joint Exhibit 15-Letter)

34. Plaintiff Porter dropped off additional petition sets on August 30, 2004, August 31, 2004, September 1, 2004, September 2, 2004, and finally on September 3, 2004 when he formally filed the Peroutka Campaign petition. (Testimony of Lori Tomczyk and Joint Exhibit 13-Application)

35. Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, dated September 20, 2004, indicating that the Peroutka

Campaign had not obtained enough valid signatures and as such would not be placed on the general election ballot. Her initials "lpt" are listed in the lower left hand corner of the last page of the letter. The letter was signed on his behalf by Office of Elections' employee Robynn Yokooji, without any changes. (Testimony of Lori Tomczyk and Joint Exhibit 17-Letter)

    36.    Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, dated September 24, 2004, indicating the revised numbers which still was less than the amount necessary for inclusion on the general election ballot. Her initials "lpt" are listed in the lower left hand corner of the letter. The letter was signed by the Chief Election Officer, without any changes. (Testimony of Lori Tomczyk and Joint Exhibit 18-Letter)

    37.    On September 24, 2004, the Peroutka Campaign submitted a written request for a hearing. (Testimony of Lori Tomczyk and Joint Exhibit 19-Letter)

    38.    A contested case hearing was subsequently held pursuant to HRS § 11-113, on September 30, 2004. (Testimony of Lori Tomczyk and Joint Exhibit 30-Transcript)

    39.    The Chief Election Officer issued his Findings of Fact, Conclusions of Law, and Decision on October 5, 2004. (Joint Exhibit 3-Decision)

    40.    The Chief Election Officer determined that the Peroutka Campaign had failed to submit the requisite number of valid signatures required by HRS §

11-113, and as such did not qualify for inclusion on the general election ballot. (Joint Exhibit 3-Decision)

## *NADER CAMPAIGN*

41. On July 16, 2004, Plaintiff Robert H. Stiver, the Hawaii Coordinator for the Nader Campaign, signed a form entitled "An Application for Petition to Place the Names of Candidates for President and Vice President on the State of Hawaii General Election Ballot." (Testimony of Lori Tomczyk and Joint Exhibit 49-Application)

42. Plaintiff Stiver was provided with information regarding what was necessary for purposes of verifying the petition signatures by Ballot Operations Section Head Lori Tomczyk. (Testimony of Lori Tomczyk and Joint Exhibit 50-Factsheet)

43. This information consisted of a ten page factsheet regarding the petition process. (Testimony of Lori Tomczyk and Joint Exhibit 50-Factsheet)

44. Ms. Tomczyk additionally provided Plaintiff Stiver a copy of the Election Laws of Hawaii booklet which contains provisions of the United States Constitution, Hawaii State Constitution, Hawaii Revised Statutes, Hawaii Administrative Rules, and County Charters related to elections. This included HRS § 11-113 and HAR §§ 2-51-110 through 2-51-113. (Testimony of Lori Tomczyk)

45. In reviewing the factsheet and the petition form, Ms. Tomczyk brought to his attention page 5 of the factsheet which provided 7 instructions for correctly completing the petition form. (Testimony of Lori Tomczyk and Joint Exhibit 50-Factsheet)

46. Ms. Tomczyk emphasized as part of her discussion with Plaintiff Stiver, consistent with the factsheet, that the petition can only be verified on the basis of the information contained on it, given that the information is compared with the information contained in the official voter register. She explained that if signatory provides information that is illegible or inconsistent with the information in the official voter register, this may result in the signature not being counted. She explained that this could involve the signatory providing an incorrect address, social security number, or date of birth, and that this may result from illegible handwriting or a signatory transposing numbers. (Testimony of Lori Tomczyk and Joint Exhibit 50-Factsheet)

47. Plaintiff Stiver was issued initial petition sets that day. Each petition set consisted of 4 pages and a total 48 rows for petition signatures. (Testimony of Lori Tomczyk and Joint Exhibit 54-Petition)

48. The Application for Petition included a "For Office Use Only" section in which the Office of Election staff would notate when petition forms were issued

to the Nader Campaign and when they were received from the Nader Campaign. (Testimony of Lori Tomczyk and Joint Exhibit 49-Application)

49. The Office of Elections received its first group of petition sets from the Nader Campaign on July 26, 2004. (Testimony of Lori Tomczyk and Joint Exhibit 49-Application)

50. The signatures were reviewed and verified against the SVRS in accordance with the applicable administrative rules. (Testimony of Lori Tomczyk)

51. At the conclusion of the review of the petition sets submitted on July 26, 2004, Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, which he signed without any changes. Ms. Tomczyk's initials "LT" are listed in the lower left hand corner of the last page of the letter. (Testimony of Lori Tomczyk and Joint Exhibit 52-Letter)

52. The letter indicated that a total of 89 signatures were found in the petition sets submitted by Plaintiff Stiver. Of the 89 signatures, 52 were found to be listed as "Active" (currently registered) in the SVRS, 2 were found to be listed as "Inactive" in the SVRS, 7 could not be verified because information on the petition was insufficient (i.e., no social security number, date of birth, signature, or could not read the record), 25 did not appear in the SVRS, 2 could not be verified because the address information on the petition did not match the address information in the SVRS, and 1 provided a name on the petition which was

different from the name indicated on the SVRS. (Testimony of Lori Tomczyk and Joint Exhibit 52-Letter)

53. The letter, dated August 2, 2004, containing the above referenced information was sent by certified mail return receipt requested. (Testimony of Lori Tomczyk and Joint Exhibit 52-Letter)

54. Other than providing two petition sets on July 30, 2004, the Nader Campaign did not provide any additional petition sets until August 27, 2004, August 30, 2004, September 2, 2004, and finally on September 3, 2004, which was the deadline for the filing of its petition. (Testimony of Lori Tomczyk and Joint Exhibit 49-Application)

55. Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, dated September 20, 2004, indicating that the Nader Campaign had not obtained enough valid signatures and as such would not be placed on the general election ballot. Ms. Tomczyk's initials "lpt" are listed in the lower left hand corner of the last page of the letter. The letter was signed on his behalf by Office of Elections' employee Robynn Yokooji, without any changes. (Testimony of Lori Tomczyk and Joint Exhibit 55-Letter)

56. In subsequently proofing the calculations, Ms. Tomczyk discovered that the numbers initially released needed to be revised from 3,672 valid signatures

to 3,124, which was decrease of 548 valid signatures. (Testimony of Lori Tomczyk)

57.   On September 23, 2004, Ms. Tomczyk met with Plaintiff Stiver at the Office of Elections and orally informed him of the error and explained to him that a letter would be sent to him with the corrected amount. (Testimony of Lori Tomczyk)

58.   During their meeting, Plaintiff Stiver presented Ms. Tomczyk with a letter requesting a hearing concerning the determination that the Nader Campaign had not obtained enough valid signatures. (Testimony of Lori Tomczyk and Joint Exhibit 57-Letter)

59.   Ms. Tomczyk prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, dated September 24, 2004, indicating the revised numbers which were still less than the amount necessary for inclusion on the general election ballot. Ms. Tomczyk's initials "lpt" are listed in the lower left hand corner of the letter. The letter was signed by the Chief Election Officer, without any changes. (Testimony of Lori Tomczyk and Joint Exhibit 43-Letter)

60.   The Nader hearing commenced on September 29, 2004. (Testimony of Lori Tomczyk and Joint Exhibit 63-Transcript)

61.  Prior to the conclusion of the hearing, the Office of Elections and the Nader Campaign entered into a settlement agreement. (Joint Exhibit 35-Settlement Agreement)

62.  On October 1, 2004, the Chief Election Officer approved the Nader Settlement Agreement, which provides that the signatures on the petition submitted by the Nader Campaign would be reviewed again in the presence of a Nader representative. (Joint Exhibit 35-Settlement Agreement)

63.  During the review, the Nader representative would be allowed to flag the signatures he believed should have been counted. (Joint Exhibit 35-Settlement Agreement)

64.  Finally, pursuant to the Nader Settlement Agreement, the Chief Election Officer would subsequently review the challenged signatures and his decision would be final. (Joint Exhibit 35-Settlement Agreement)

65.  On October 18, 2004, the Chief Election Officer issued his findings that the Nader Campaign had failed to obtain the requisite amount of valid signatures required by Hawaii Revised Statutes § 11-113. (Joint Exhibit 36-Findings)

DATED: Honolulu, Hawai`i, February 28, 2008.

_/s/ Aaron H. Schulaner_
AARON H. SCHULANER
HOLLY T. SHIKADA
Deputy Attorneys General

Attorneys for Defendant
KEVIN B. CRONIN

_/s/ Eric A. Seitz_
ERIC A. SEITZ
LAWRENCE I. KAWASAKI

Attorneys for Plaintiffs
RALPH NADER, PETER MIGUEL
CAMEJO, ROBERT H. STIVER,
MICHAEL A. PEROUTKA, CHUCK
BALDWIN, and DAVID W.
PORTER