ORIGINAL

MARK J. BENNETT          2672
Attorney General of Hawaii

AARON H. SCHULANER       6954
HOLLY T. SHIKADA         4017
Deputy Attorneys General
235 S. Beretania Street, Room 304
Honolulu, Hawaii 96813
Telephone: (808) 586-1255
Facsimile: (808) 586-1488
E-Mail: aaron.h.schulaner@hawaii.gov

Attorneys for Defendant

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 05 2008

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| RALPH NADER, PETER MIGUEL CAMEJO, ROBERT H. STIVER, MICHAEL A. PEROUTKA, CHUCK BALDWIN, AND DAVID W. PORTER,<br><br>Plaintiffs,<br><br>vs.<br><br>KEVIN B. CRONIN, Chief Election officer, State of Hawaii,<br><br>Defendant. | CIVIL NO. 04-00611 ACK-LEK<br><br>DEFENDANT'S SUPPLEMENTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW; CERTIFICATE OF SERVICE<br><br><br>TRIAL<br>DATE:  March 10, 2008<br>TIME:   9:00 a.m.<br>JUDGE: Hon. Alan C. Kay |

## DEFENDANT'S SUPPLEMENTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant Kevin B. Cronin, in his official capacity as Chief Election Officer, State of Hawaii, by and through his attorneys Mark J. Bennett, Attorney General, and his undersigned deputies hereby submits his Proposed Findings of Fact and Conclusions of Law.

I.    INTRODUCTION

On February 28, 2008, a pre-trial conference was held before the Honorable Alan C. Kay. During the discussion of the upcoming case, Plaintiffs stated they were challenging the constitutionality of the administrative rules that were implemented by the Office of Elections in verifying the petition signatures.

Defendant argued that Plaintiffs had failed to properly raise the issue of the constitutionality of the administrative rules in Count II of the Complaint, which was the sole count of the Complaint remaining after the Honorable J. Michael Seabright's Order, filed on February 7, 2008. In the alternative, Defendant argued that the issue of the constitutionality of the administrative rules was essentially addressed when the Honorable J. Michael Seabright had found that HRS § 11-113 was constitutional, given that the administrative rules were promulgated in furtherance of the statute.

Ultimately, the Court ordered the parties to prepare supplemental findings of fact and conclusions of law, addressing the issue of the constitutionality of the administrative rules.  In addition, Defendant was asked if it disputed that Plaintiffs were entitled to attorney fees and costs, if they prevailed.  Defendant stated it was not yet willing to stipulate to Plaintiffs entitlement to attorneys fees and costs if they prevailed.  As such, the Court ordered Defendant to address his position on the matter in his supplemental proposed findings of fact and conclusions of law.

II.    SUPPLEMENTAL PROPOSED FINDINGS OF FACTS AND
       CONCLUSIONS OF LAW

       *SCOPE OF THE COMPLAINT AND RELIEF SOUGHT*

       1.    Plaintiffs' Complaint, in regards to jurisdiction, states that "[t]his case arises under the Constitution and statutes of the United States and the State of Hawaii, inter alia" and "[t]he claims asserted herein present a question of federal law thereby conferring jurisdicition upon the Court pursuant to 28 U.S.C. Sections 131 and 1343(a), inter alia.  Any and all state law claims contained herein form part of the same case or controversy as gives rise to Plaintiff's federal claims and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. Section 1367."  Complaint at ¶¶ 2 & 3.

3

2.     Plaintiffs' Complaint claims that the Defendant "violated constitutional rights guaranteed to them by the First, Fifth, and Fourteenth Amendments to the Constitution of the State of Hawaii."  Additionally, Plaintiffs allege that Defendant "violat[ed] constitutional rights guaranteed to the Plaintiffs by the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, inter alia."  Complaint at ¶¶ 20 & 21.

3.     No other specific statute or constitutional provision is cited in Plaintiffs' Complaint.

4.     In terms of relief, Plaintiffs' Complaint seeks (1) an entry of judgment declaring that Hawaii Revised Statutes (HRS) § 11-113 is unconstitutional in that it requires more valid petition signatures for an independent candidates than what is required to form a political party; (2) an entry of judgment declaring that Defendant's decision to not place Plaintiffs on the general election ballot was unconstitutional in that it was arbitrary and capricious and violated various constitutional provisions; (3) an injunction to place Plaintiffs on the general election ballot; (4) reimbursement of costs and expenses including reasonable attorneys fees and costs; and (5) further and additional relief as the Court deems appropriate and just.  Complaint at Prayer for Relief ¶¶ 1 - 4.

4

5.    The Court notes that it is generally understood that the Plaintiffs are the masters of their claim.  The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411-12 (1913).  As such, this matter is restricted to the scope of the matters raised in Plaintiffs' Complaint.

## PREVAILING PARTY STATUS

6.    The law is clear that the shifting of attorneys fees and costs to a prevailing party must be authorized by a specific statutory provision.  In the present case, no specific statutory provision providing for the awarding of attorneys and costs is cited by Plaintiffs in their Complaint.  Alyeska Pipeline Service Company v. The Wilderness Society, et al., 421 U.S. 240, 95 S.Ct. 1612 (1975).

7.    Assuming for the sake of argument that the Court were to imply a specific statutory provision that allows for the awarding of attorneys fees and costs, the Court would not determine Plaintiffs to be prevailing party, as what they would obtain in this litigation is de minimis.

8.    Specifically, in order to be a prevailing party there needs to be "a material alteration in the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  Texas State Teachers Ass'n v. Garland Independent School District, 489 U.S. 782, 792-93, 109 S.Ct. 1486, 1494 (1989).

However, "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or de minimis, a district court would be justified in concluding that even the 'generous formulation' we adopt today has not been satisfied." Id. at 792, 109 S.Ct. at 1493-94.

9.    In the present case, Plaintiffs injunctive remedy is now moot given that the Honorable David Alan Ezra denied Plaintiffs's motions for a temporary injunction and a preliminary injunction, and the 2004 General Election has been completed.  In regards to the request for a finding that HRS § 11-113 is unconstitutional, the Honorable J. Michael Seabright has addressed that matter and found the statute to be constitutional.  All that remains is for this Court to address Plaintiff request for a finding that Defendant's decision not place Plaintiffs on the ballot was unconstitutional.  There would be no actual material change in the position of the parties as a result of such a finding.  Any such finding would merely be de minimis.

### CONSTITUTIONALITY OF THE PROCEDURES
### USED TO REVIEW THE PETITION  SIGNATURES

10.    Hawaii Revised Statutes (HRS) § 11-113 provides for the process by which an individual may petition to be placed on the general election ballot for the office of President of the United States of America.  It specifically provides that the

petition must be signed by a prerequisite amount of "currently registered voters."
Additionally, it provides that the petition shall contain "the address of each
signatory" and "other information as determined by the chief election officer."

11.    HRS § 11-4 provides that the Chief Election Officer may promulgate
rules to carry out the election laws of the State of Hawaii.  These rules when
adopted in conformity with chapter 91 of the HRS and approved by the Governor
have the force and effect of law.

12.    There is no dispute that Hawaii Administrative Rules (HAR) §§ 2-51-
110 through 2-51-113 were adopted in conformity with chapter 91 of the HRS and
were approved by the Governor and as such have the force and effect of law.

13.    HAR § 2-51-110 provides that the petition form shall be substantially
similar to Appendix H dated July 1, 2000, which is attached to the administrative
rules.  The petition form contains the following columns for the voter to fill out (1)
"Print Your Name Here," (2) "Sign the Name Under Which You Are Registered to
Vote," (3) "Print the Residence Address at Which You are Registered to Vote," (4)
"Birth Date," and (5) "Date Signed."  There is additionally a column for the voter's
"Social Security Number," however completing this column is optional.  The
signatory is required to provide all of the relevant information in order to verify the

identity of the signature as a currently registered voter.  Appendix H to HAR § 2-51-110.

14.    HAR § 2-51-111 provides that a signatory may withdraw their signature prior to the filing of the petitions.

15.    HAR § 2-51-112 provides that "the chief election officer or a designated representative shall determine whether the signatory is an active registered voter by checking the statewide voter registration system; provided that a properly executed voter registration form shall be effective if it is received by the clerk and the affiant's name has been entered in the statewide voter registration system on or before the date on which the petition is filed."

16.    HAR § 2-51-113 provides the process by which the chief election officer or designated representative shall verify whether the signatory is eligible to sign the petition.  Specifically, the verification process is as follows: (1) if the signatory on the petition exists as an active registered voter in the SVRS, then the signatory is counted; (2) if the signatory does not exist as an active registered voter in the SVRS, then the signatory is not counted; (3)  if there are duplicate signatures, and the signatory is an active registered voter, then the signatory is counted once; and  (4) "if the signatory does not provide all of the required information on the

petition or if the information is not legible, then the signatory may not be counted."

HAR § 2-51-113(b)(1)-(4).

17.    In the present case, it appears that Plaintiffs do not actually take issue

with the constitutionality of HRS § 11-113 or HAR § 2-51-110 through 2-52-113.

Instead, Plaintiffs take issue with the manner in which the statute and administrative

rules were implemented, as expressed in the instructions provided to Plaintiffs for

correctly completing the Petition Form.  Joint Exhibit 25.

18.    Joint Exhibit 25 is a factsheet of the Office of Elections, which has

been in use at least as early as 1999, and was created by individuals prior to the

current Ballot Operations Section Head Lori Tomczyk.  There have been non

substantive changes made to the factsheet since 1999, but it has remained

essentially the same.  Testimony of Lori Tomczyk.

19.    A review of the instructions indicates, in part, that the petition can only

be verified on the basis of the information contained on it, given that the

information is compared with the information contained in the official voter register.

As such, if the signatory provides information that is illegible or inconsistent with

the information in the official voter register, this may result in the signature not being

counted.  Examples of a signatory providing illegible or inconsistent information as

stated in the official voter register include an incorrect address, social security number, or date of birth. Joint Exhibit 25.

20.     An additional instruction provides that the signatory must provide the residence address where he/she is registered to vote. The instruction notes that if the signatory records an address to which the signatory has moved subsequent to registering and has failed to make the change of registration as required by law, that the signature would not be counted. The instruction concludes by noting that mailing addresses were not acceptable. Joint Exhibit 25.

21.     Assuming for the sake of argument that Plaintiffs' Complaint raises a challenge to the constitutionality of these instructions or the manner in which signatures were verified, the Court notes the appropriate constitutional analysis to be followed is found in <u>Anderson vs. Celebrezze</u>, 460 U.S. 780, 103 S.Ct. 1564 (1983).

22.     The United States Supreme Court has established a two-part test. The first part is the consideration of the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments. The second part is to "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule" and "determine the legitimacy and

strength of each of those interests." Id. at 789, 103 S.Ct. at 1569.

23.    In applying this analysis, the United States Supreme Court has held that when a state election law imposes reasonable non-discriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the state's important regulatory interest are generally sufficient to justify the restrictions. Id. at 780, 103 S.Ct at 1569.

24.    In looking at part one of the Anderson analysis concerning the character and magnitude of the asserted injury to constitutional rights, it should be noted that all election laws to a certain extent impact constitutional rights. Id. at 788, 103 S.Ct. at 1570 ("Each provision of these schemes, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects--at least to some degree--the individual's right to vote and his right to associate with others for political ends.")

25.    As such, the focus of part one of the Anderson analysis is whether the procedures are reasonable and nondiscriminatory.  There can be no dispute that the information required by the petition form is reasonable and nondiscriminatory.  The petition laws merely require all signatories to provide the date on which they signed the petition, and the confirmatory information of their name, date of birth, and the

11

residence address at which they are registered to vote.  HRS § 11-113 & HAR §

2-51-110(c)(Appendix H).

26.    This is the same information that all voters are statutorily required to

provide when they register to vote.  HRS § 11-15 & HAR § 2-51-20 (Appendix A-

Voter Registration Form).  No additional  information is being asked for from the

prospective signatory.

27.    The instructions in Joint Exhibit 25 which state that mailing addresses

are not acceptable are completely in line with the language of the petition form,

Appendix H, which was promulgated by HAR § 2-51-110.  The petition form

specifically states that the signatory is to provide "the residence address which are

you are registered to vote."  Given that Plaintiffs appear not to take issue with the

administrative rules and the administrative rules promulgated the petition form

which requires the provision of a residence address, it is unclear how they can

argue that the instruction in Joint Exhibit 25 that mailing addresses are not

acceptable, is incorrect, given that the petition form only allows for the provision of

a residence address.

28.    In terms of the petition requirements, they are significantly less

onerous than the requirement of the notarization of petition signatures, which was

12

previously affirmed by the U.S. Supreme Court in American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296 (1974). Specifically, in White, the Texas ballot qualification system was challenged, including the requirement of notarized signatures. The Supreme Court determined that the requirement of notarized signatures was not an impermissible burden on First and Fourteenth Amendment rights. Id. at 787, 94 S.Ct. at 1309.

29.    In regards to the criteria to be used when reviewing signatures, the Office of Elections requires all of the requested information to be provided and for it to be legible. HAR § 2-51-113(b)(4). If this does not occur, then the signatory is not counted. Id. This criteria is reasonable and nondiscriminatory in that it applies to all signatures and is necessary in order to (1) detect fraudulent or questionable signatures; (2) determine if a signatory is actually a "currently registered voter" or if there is a problem with his or her registration; and (3) maintain the integrity of the voter registration rolls.

30.    Plaintiffs contend that the provision of a mailing address in lieu of a residence address is appropriate, despite the petition form requiring a residence address. Plaintiffs contend that if the mailing address is found in the SVRS then the signature should be counted. However, Plaintiffs do not acknowledge the fact

13

that substantively a residence address is required in order to determine if a

signatory is in fact who they claim to be and in ascertaining whether the individual is

a "currently registered voter" in terms of being qualified to sign the petition.

31.    Specifically, the provision of a residence address is the cornerstone of

what is necessary to be a registered voter.  As expressed in HRS § 11-15 a

residence address is required in order to register to vote.  This is not a minor

requirement.  A person's residence dictates where the person can vote and for what

office.  As such, the election laws address the issue of residence address in HRS

§§ 11-13, 11-14, 11-14.5, 11-15, 11-18, 11-19, 11-20, 11-15, and 11-26.  A mailing

address in comparison has no real legal significance when it comes to being a

registered voter.

32.    In today's transitory world, a mailing address only serves as a place

where an individual can consistently get his or her mail and nothing more.  With this

in mind, it means nothing if a signatory provides a P.O. Box address.

33.    Specifically, a signatory who provides a P.O. Box is not in fact

confirming that he or she is still properly registered at the residence indicated in the

SVRS.  The signatory is merely saying that he or she still receives their mail at the

same place.  The law is clear that providing one's residence is the linchpin of being

properly registered.

34.    Under HRS § 11-18 a registered voter who changes residence from one precinct to another is required to notify the county clerk and change their registration.  In addition, the change in registration can be challenged under the provisions in HRS § 11-25.  As such, just because a person provides the same P.O. Box address which is on file with the county clerk, does not mean the individual is "currently registered" as the individual may have moved and needs to update their voter registration in order to legally be able to vote.  If the person is not able at the time of signing the petition to vote at the place the individual resides, then the individual is not currently registered.

35.    In terms of identifying the signatory as the person he or she claims to be it is reasonable on the part of election officials to ask the individual to provide the residence address, which the alleged voter provided when he or she registered, and if the person is not able to provide that information, it is reasonable for the election official to conclude that the signature should not be verified as that of a person on the SVRS under those circumstances.

36.    Plaintiffs' presumption appears to be that everybody who signs a petition is a currently registered voter.  As such, Plaintiffs are essentially arguing

that the State should be not be allowed to exercise its clear and unambiguous

discretion to not count a signature for which the required information is not

provided or illegible.

37.    In contrast to the presumption argued by Plaintiffs, the Court notes

that other jurisdictions, such as the State of Pennsylvania have reported cases,

which note the failure to provide required information on the petition will justify not

counting the signature.  In re Nomination Petition of Susan M. Silcox, 543 Pa. 647,

674 A.2d 224 (Penn. Sct. 1996) (failure of a signatory to write his or her

occupation, place of residence, or even date of signature would result in the

signature not being counted, even if a third party were to later provide the

information on the petition prior to filing); In Re Nomination Petition of Mary

Flaherty, 564 Pa. 671, 770 A.2d 327 (Penn. Sct. 2001) (printed names in the place

of signatures were not counted, signatures for which the address provided did not

match what was on file were not counted).

38.    As noted previously, the second part of the Anderson analysis is to

"identify and evaluate the precise interests put forward by the State as justifications

for the burden imposed by its rule" and "determine the legitimacy and strength of

each of those interests."  The level of scrutiny that should be applied depends on

the nature of the burden that has been imposed.  Specifically, if the burden is severe

then the requirement needs to be "narrowly drawn to advance a state interest of

compelling importance."  Burdick v. Takushi, 504 U.S. 428, 434, 112 S.Ct. 2059,

2063 (quoting Norman v. Reed, 502 U.S. 279, 289, 112 S.Ct. 698, 705 (1992)).

However, if the law imposes reasonable non-discriminatory restrictions, then the

state's important regulatory interests are generally sufficient to justify the

restrictions.  Anderson vs. Celebrezze, 470 U.S. 780, 788, 103 S.Ct 1564, 1569

(1983).  To do otherwise, would essentially tie the hands of the State to be able "to

assure that [its] elections are operated equitably and efficiently."  Burdick v.

Takushi, 504 U.S. 428,433, 112 S.Ct. 2059, 2063 (1992).

    39.    In the present case, the petition verification requirements are

reasonable and nondiscriminatory in that the signatory is merely asked to provide

the same information that was previously provided by the individual, when he or

she allegedly registered to vote.  As such, the State's important regulatory interests

are sufficient to justify the petition verification requirements.  These important

regulatory interests include (1) ensuring that the election processes are efficient; (2)

avoiding voter confusion by overcrowding the ballot by those who cannot show

more than a modicum of support; (3) detecting fraudulent or questionable

17

signatures; (4) determining if the signatory is actually a "currently registered voter" or if there is a problem with his or her registration; and (5) maintaining the integrity of the voter registration rolls.

40.    Plaintiffs' argument that the Office of Elections' determinations were arbitrary, capricious, and/or was not based on credible evidence, is essentially an extension of its argument that the practices and procedures mandated by statute and administrative rule are unconstitutional.

41.    At the Peroutka Hearing, Plaintiff David Porter noted his appreciation of the work, the effort, and the cooperative attitude of the Office of Elections and further stated that he had no complaint about how the process had been handled. Additionally, he stated that he was not taking issue with the competence or ethics of the Office of Elections.  In fact, Plaintiff Porter complimented the staff on how well they were able to decipher otherwise illegible handwriting.  He also admitted that he had concerns regarding the validity of the signatures due to the use of certain individuals that were sent by the national party.   Joint Exhibit 30 at pages 10, 44-45, and 74-76.

42.    In regards to the Nader Campaign, it entered into a settlement agreement in which it agreed that it "would not do a Court challenge signature by

18

signature.  Rather we would challenge those Hawaii statutory or administrative ruels

that exceed those that are permissible under the U.S. Counstituion or federal

statutes, including but not limited to the Voting Rights Act of 1965, as amended, or

under the Hawaii Constitution."  Joint Exhibit 35.

43.    The Nader Campaign entering into this settlement is evidence that it

trusted the integrity of the Chief Election Officer to be fair and impartial in his

review of the decisions by the Office of Elections' staff in verifying the petition

signatures, and that it waived any argument regarding arbitrariness or

capriciousness related to the verification of the petition signatures.

44.    The Nader Settlement, precludes the ability of the Nader Campaign in

this proceeding from challenging each petition signature that was not originally

counted.  As such, the Court does not entertain Plaintiffs Nader, Camejo, and

Stiver's attempt to argue that the review of the signatures was arbitrary or

capricious, outside of the Court's general determinations regarding the

constitutionality of the disputed election statute and administrative rules.

45.    The evidence reflects that the Office of Elections followed the

administrative rules in verifying the petition signatures and that several of the names

were in fact illegible or the signatory did not provide all of the required information.

19

Testimony of Lori Tomczyk, Joint Exhibit 23 & 54.

46.   Under these circumstances the Court finds that Plaintiffs have not met their burden of showing that the review process was either arbitrary or capricious.

DATED:  Honolulu, Hawaii, March 5, 2008.

AARON H. SCHULANER
HOLLY T. SHIKADA

Attorneys for Defendant
KEVIN B. CRONIN

<u>CERTIFICATE OF SERVICE</u>

I hereby certify, a true and correct copy of the foregoing document was duly

served, on this date, by HAND-DELIVERY upon the following individual(s) in the

manner indicated:

ERIC A. SEITZ, ESQ.
LAWRENCE I. KAWASAKI, ESQ.
820 Mililani Street, Suite 714
Honolulu, Hawaii  96813

DATED:  Honolulu, Hawaii, March 5, 2008.

AARON H. SCHULANER