ORIGINAL

MARK J. BENNETT          2672
Attorney General of Hawaii

AARON H. SCHULANER       6954
HOLLY T. SHIKADA         4017
Deputy Attorneys General
235 S. Beretania Street, Room 304
Honolulu, Hawaii 96813
Telephone: (808) 586-1255
Facsimile: (808) 586-1488
E-Mail: aaron.h.schulaner@hawaii.gov

Attorneys for Defendant

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 07 2008

at ____ o'clock and ____ min. ____ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RALPH NADER, PETER MIGUEL CAMEJO, ROBERT H. STIVER, MICHAEL A. PEROUTKA, CHUCK BALDWIN, AND DAVID W. PORTER,<br><br>    Plaintiffs,<br><br>  vs.<br><br>KEVIN B. CRONIN, Chief Election officer, State of Hawaii,<br><br>    Defendant. | CIVIL NO. 04-00611 ACK-LEK<br><br>DECLARATION OF LORI TOMCZYK; CERTIFICATE OF SERVICE<br><br><br><br><br><br>TRIAL<br>DATE: March 10, 2008<br>TIME: 9:00 a.m.<br>JUDGE: Hon. Alan C. Kay |

DECLARATION OF LORI TOMCZYK

I, LORI TOMCZYK, under penalty of law, do hereby declare as follows:

1.     I have personal knowledge of the following facts and am competent to testify to them.

2.     I am the Ballot Operations Section Head for the Office of Elections.

3.     I have held that position since 1999.

4.     During election year 2004, the Office of Elections was headed by Chief Election Officer Dwayne D. Yoshina.

5.     Responsibility for verifying the petitions of prospective presidential candidates for inclusion on the general election ballot was delegated to me.

6.     Chief Election Officer Dwayne D. Yoshina was not involved in the petition verification process.

7.     Regarding the presidential petition process I followed the requirements provided for in HRS § 11-113 and Hawaii Administrative Rules (HAR) §§ 2-51-110 through 2-51-113.

8.     The law as I understand it provides that the petition shall contain the signatures of currently registered voters, which constitute not less than one per cent of the votes cast in the State at the last presidential election.  HRS § 11-113.

9.     In the 2000 presidential election, 371,033 votes were cast in Hawaii. As such the Office of Elections required 3,711 signatures of currently registered voters for the 2004 presidential petition.

10.    The Office of Elections utilized the petition form prescribed by the Chief Election Officer through administrative rule HAR § 2-51-110.

11.    The form contains the following columns for the voter to fill out (1) "Print Your Name Here," (2) "Sign the Name Under Which You Are Registered to Vote," (3) "Print the Residence Address at Which You are Registered to Vote," (4) "Birth Date," and (5) "Date Signed." There is additionally a column for the voter's "Social Security Number," however completing this column is optional. The signatory is required to provide all of the relevant information in order to verify the identity of the signature as a "currently registered voter."

12.    When an individual registers to vote, the individual is required to provide the same information. Specifically, HRS § 11-15 requires the provision of the individual's name, social security number, date of birth, and residence address, among other information.

13.    In reviewing the petition sets, the determination as to whether a signatory would be counted was based on whether HAR §§ 2-51-111 and 2-51-112 had been complied with.

14.    Specifically, the signatory is checked against the statewide voter registration system (SVRS) to determine if he or she is an active registered voter.

15.    An active registered voter refers to all registered voters except those whose names are being removed as a result of the voter removal program of the

3

National Voter Registration Act (42 USC § 1973gg-6) along with those individuals under state law who are no longer eligible to vote. Such people, would include, but not be limited to, incarcerated felons, persons confirmed registered in another jurisdiction, people who have self cancelled their registration, and individuals who have been reported to be deceased.

16.    The SVRS allows for voter records to be pulled up by either social security number or name. As such, if the signatory does not legibly write his or her name, or does not provide his or her social security number, the records of the SVRS cannot be accessed and as such the signatory cannot be verified as a currently registered voter.

17.    After a voter's record is either pulled up by name or social security number, the law provides for the manner in which the signatory will be validated: (1) if the signatory on the petition exists as an active registered voter in the SVRS, then the signatory is counted; (2) if the signatory does not exist as an active registered voter in the SVRS, then the signatory is not counted; (3)  if there are duplicate signatures, and the signatory is an active registered voter, then the signatory is counted once; and  (4) "if the signatory does not provide all of the required information on the petition or if the information is not legible, then the signatory may not be counted."  HAR § 2-51-113(b)(1)-(4).

4

18.    In terms of the 2004 verification procedures, in accordance with HAR § 2-51-113(b)(4), if the signatory did not provide the required information (i.e. name, date of birth, residence address where the individual was registered to vote, and signature), or if the information was illegible, or if the information provided did not correspond with the information on file in the SVRS, the Office of Elections did not count the signature, as all of the information was deemed to be necessary in order to verify that the signatory was in fact a currently registered voter.

19.    These verification procedures are reasonable and nondiscriminatory in that they apply to all signatures and are necessary in order to (1) detect fraudulent or questionable signatures; (2) determine if a signatory is actually a "currently registered voter" or if there is a problem with his or her registration; and (3) to maintain the integrity of the voter registration rolls.

20.    It is my understanding that the Plaintiffs contend that the provision of a P.O. Box address in lieu of a residence address is appropriate, despite the petition form requiring a residence address, and as such if the P.O. Box address is found in the SVRS then the signature should be counted as a currently registered voter.

21.    I disagree that such a process of verification would be appropriate.

22.    In terms of identifying the signatory as the person he or she

5

claims to be it is reasonable on the part of election officials to ask the individual to provide the name, date of birth, and residence address, which the alleged voter provided when he or she registered, and if the person is not able to provide that information, it is reasonable for the election official to conclude that there is insufficient information for the Office of Election to verify that the signature is of someone on the SVRS.

23.    In addition, the provision of a residence address is required in order to determine if a signatory is in fact a "currently registered voter" in terms of being qualified to sign the petition.

24.    Specifically, the provision of a residence address is the cornerstone of what is necessary to be a registered voter. As expressed in HRS § 11-15 a residence address is required in order to register to vote. This is not a minor requirement. A person's residence address dictates where the person can vote and for what office.

25.    In today's transitory world, a P.O. Box address only serves as a place where an individual can consistently get his or her mail and nothing more. It is not a substitute for the signatory expressing his or her residence address.

26.    Specifically, a signatory who provides a P.O. Box is not in fact confirming that he or she is still properly registered at the residence indicated in the SVRS. The signatory is merely saying that he or she still receives their mail at

the same place.  As noted earlier, providing one's residence is the linchpin of being properly registered.

27.    Under HRS § 11-18 a registered voter who changes residence from one precinct to another is required to notify the county clerk and change their registration.  In addition, the change in registration can be challenged under the provisions in HRS § 11-25.  As such, just because a person provides the same P.O. Box address which is on file with the county clerk, in the SVRS, does not mean the individual is "currently registered" as the individual may have moved and needs to update their voter registration in order to be able to vote.  If the person is not able at the time of signing the petition to vote at the place the individual resides, then the individual is not currently registered.

28.    Aspiring presidential candidate Plaintiffs Michael A. Peroutka and his vice presidential running mate Chuck Baldwin were not designated by a qualified political party and thus needed to petition to be placed on the general election ballot.

29.    Plaintiff David W. Porter on behalf of Plaintiffs Peroutka and Baldwin acted as their representative in the State of Hawaii in regards to the petition process.

30.    On May 4, 2004, Plaintiff David Porter, the Hawaii Coordinator for the Peroutka for President 2004 Campaign (Peroutka Campaign), filled out a form

entitled "An Application for Petition to Place the Names of Candidates for President and Vice President on the State of Hawaii General Election Ballot."

31.    Plaintiff Porter was provided with information regarding what was necessary for purposes of verifying the petition signatures by me.

32.    This information consisted of a ten page factsheet regarding the petition process.

33.    Joint Exhibit 25 is true and correct copy of the factsheet that was provided to Plaintiff Porter regarding the petition process.

34.    I did not start as Ballot Operations Section Head until 1999. However, the factsheet was in existence at that time.  In reviewing my files, the earliest version of the factsheet I can find is from 1996.  Only minor revisions have occurred over the years.  To my knowledge the notation that mailing addresses are not acceptable has consistently been in the factsheet.

35.    I additionally provided Plaintiff Porter a copy of the Election Laws of Hawaii Handbook which contains provisions of the United States Constitution, Hawaii State Constitution, Hawaii Revised Statutes, Hawaii Administrative Rules, and County Charters related to elections.  This included HRS § 11-113 and HAR §§ 2-51-110 through 2-51-113.

8

36.    In reviewing the factsheet and the petition form, I brought to his attention page 5 of the factsheet which provided 7 instructions for correctly completing the petition form.

37.    I emphasized as part of my discussion with Plaintiff Porter, consistent with the factsheet, that the petition can only be verified on the basis of the information contained on it, given that the information is compared with the information contained in the official voter register. I explained that if signatory provides information that is illegible or inconsistent with the information in the official voter register, this may result in the signature not being counted. I explained that this could involve the signatory providing an incorrect address, social security number, or date of birth, and that this may result from illegible handwriting or a signatory transposing numbers.

38.    I also emphasized, consistent with the factsheet, that the residence address of the signatory where he/she is registered to vote must be recorded. I explained that if the signatory records an address to which the signatory has moved subsequent to registering and has failed to make the change of registration as required by law, that the signature would not be counted. I also explained that mailing addresses were not acceptable as the residence address was required.

39.    In addition, I emphasized that the signatory's social security number or date of birth would be needed to distinguish among people having identical names and/or addresses.

40.    Plaintiff Porter was issued initial petition sets that day.  Each petition set consisted of 4 pages and a total 48 rows for petition signatures.

41.    The Application for Petition included a "For Office Use Only" section in which the Office of Election staff would notate when petition forms were issued to the Peroutka Campaign and when they were received from the Peroutka Campaign.

42.    Joint Exhibit 13 is a true and correct copy of the form entitled "An Application for Petition to Place the Names of Candidates for President and Vice President on the State of Hawaii General Election Ballot" signed by Plaintiff Porter and used by the Office of Elections in tracking the issuing and receipt of petition sets from Plaintiff Porter .

43.    The Office of Elections received its first group of petition sets from the Peroutka Campaign on July 15, 2004.

44.    The signatures were reviewed and verified against the Statewide Voter Registration System (SVRS) in accordance with the applicable administrative rules.

10

45.     At the conclusion of the review of the petition sets submitted on July 15, 2004, I prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, which he signed without any changes.  My initials "LPT" are listed in the lower left hand corner of the last page of the letter.

46.     The letter indicated that a total of 606 signatures were found in the petition sets submitted by Plaintiff Porter.  Of the 606 signatures, 299 were found to be listed as "Active" (currently registered) in the SVRS, 35 were found to be listed as "Inactive" in the SVRS, 67 could not be verified because information on the petition was insufficient (i.e., no social security number, date of birth, signature, or could not read the record), 146 did not appear in the SVRS, 59 could not be verified because the address information on the petition did not match the address information in the SVRS, and 0 were found to have appeared twice on the petition.

47.     The letter, dated July 29, 2004, containing the above referenced information was picked up by Plaintiff Porter, personally, from the Office of Elections on July 30, 2004.

48.     Joint Exhibit 14 is a true and correct copy of the July 29, 2004 letter that was provided to Plaintiff Porter.

49.     Petition sets were received by the Office of Elections on July 30, 2004, August 6, 2004, and August 13, 2004.

50.    The signatures were reviewed and verified against the SVRS in accordance with the applicable administrative rules.  At the conclusion of the review of the petition sets submitted on July 30, 2004, August 6, 2004, and August 13, 2004, I prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, which was ultimately signed on his behalf by Office of Elections' employee Robynn Yokooji, without any changes.  My initials "LPT" are listed in the lower left hand corner of the last page of the letter.

51.    The letter was dated August 24, 2004 and was sent by certified mail return receipt requested.  The letter indicated that as of August 13, 2004, a total of 2,077 signatures had been submitted of which 1,039 were found to be valid.  The letter provided a breakdown as the previous letter had of the amount of signatures that had been received, and how many had been found to be valid or invalid and the reasons why.  As a reminder, the letter also indicated that the deadline for the filing of the petition was September 3, 2004.

52.    Joint Exhibit 15 is a true and correct copy of the August 24, 2004 letter that was mailed to Plaintiff Porter.

53.    Plaintiff Porter dropped off additional petition sets on August 30, 2004, August 31, 2004, September 1, 2004, September 2, 2004, and finally on September 3, 2004 when he formally filed the Peroutka Campaign petition.

12

54.    The additional petition sets were again reviewed following the procedures established by HRS § 11-113 and its implementing administrative rules.

55.    Joint Exhibit 23 is the petition that was filed by Plaintiff Porter on behalf of the Peroutka Campaign.

56.    A review of the Peroutka Campaign petition indicates that the vast majority of the signatories did not provide their social security number and that many of the names submitted were not legible.

57.    The petition signatures were reviewed and verified against the SVRS in accordance with the applicable administrative rules.

58.    I prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, dated September 20, 2004, indicating that the Peroutka Campaign had not obtained enough valid signatures and as such would not be placed on the general election ballot.  My initials "lpt" are listed in the lower left hand corner of the last page of the letter.  The letter was signed on his behalf by Office of Elections' employee Robynn Yokooji, without any changes.

59.    Joint Exhibit 17 is a true and correct copy of the September 20, 2004 letter sent to Plaintiff Porter.

60.    In proofing the calculations, I discovered that the numbers initially released needed to be revised.  Specifically, a group of signatures had been counted

twice. The ultimate result was that the amount of valid signatures was reduced from 3,481 to 3,471.

61.    I prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, dated September 24, 2004, indicating the revised numbers which still was less than the amount necessary for inclusion on the general election ballot. My initials "lpt" are listed in the lower left hand corner of the letter. The letter was signed by the Chief Election Officer, without any changes.

62.    Joint Exhibit 18 is a true and correct copy of the September 24, 2004 letter sent to Plaintiff Porter.

63.    On September 24, 2004, the Peroutka Campaign submitted a written request for a hearing.

64.    Joint Exhibit 19 is a true and correct copy of the September 24, 2004 letter from Plaintiff Porter requesting a hearing.

65.    A contested case hearing was subsequently held pursuant to HRS § 11-113, on September 30, 2004.

66.    I testified at the administrative hearing and was present during the testimony of Plaintiff Porter.

67.    Joint Exhibit 30 is a true and correct copy of the transcript of the September 30, 2004 hearing.

14

68.    During the hearing, Plaintiff Porter testified that he appreciated the work, effort, and cooperative attitude of the Office of Elections and had no complaints about how the process was handled at that point and he reemphasized that those comments were directed especially to me.

69.    During the hearing, Plaintiff Porter admitted that certain signatures or addresses he was challenging were illegible to even him, and that he complimented the staff of the Office of Elections on how well they had been able to decipher illegible handwriting to do as well as they did.

70.    During the hearing, after I testified about being concerned that 12 names on the petition looked like they could have been written by the same person, Plaintiff Porter admitted that he had concerns regarding two individuals that were sent to him, apparently by the national Peroutka campaign, who in one group of petitions had obtained 300 signatures, of which only 39 were found to be valid

71.    The Chief Election Officer issued his Findings of Fact, Conclusions of Law, and Decision on October 5, 2004.

72.    Joint Exhibit 3 is a true and correct copy of the Findings of Fact, Conclusions of Law, and Decision, dated October 5, 2004.

73.    The Chief Election Officer determined that the Peroutka Campaign had failed to submit the requisite number of valid signatures required by HRS § 11-113, and as such did not qualify for inclusion on the general election ballot.

74.    On July 16, 2004, Plaintiff Robert H. Stiver, the Hawaii Coordinator for the Nader Campaign, signed a form entitled "An Application for Petition to Place the Names of Candidates for President and Vice President on the State of Hawaii General Election Ballot."

75.    Plaintiff Stiver was provided with information regarding what was necessary for purposes of verifying the petition signatures by me.

76.    This information consisted of a ten page factsheet regarding the petition process.

77.    Joint Exhibit 50 is true and correct copy of the factsheet that was provided to Plaintiff Stiver regarding the petition process.

78.    I additionally provided Plaintiff Stiver a copy of the Election Laws of Hawaii Handbook which contains provisions of the United States Constitution, Hawaii State Constitution, Hawaii Revised Statutes, Hawaii Administrative Rules, and County Charters related to elections.  This included HRS § 11-113 and HAR §§ 2-51-110 through 2-51-113.

79.    In reviewing the factsheet and the petition form, I brought to his attention page 5 of the factsheet which provided 7 instructions for correctly completing the petition form.

80.    I emphasized as part of my discussion with Plaintiff Stiver, consistent with the factsheet, that the petition can only be verified on the

16

basis of the information contained on it, given that the information is compared with the information contained in the official voter register. I explained that if signatory provides information that is illegible or inconsistent with the information in the official voter register, this may result in the signature not being counted. I explained that this could involve the signatory providing an incorrect address, social security number, or date of birth, and that this may result from illegible handwriting or a signatory transposing numbers.

81.    I also emphasized, consistent with the factsheet, that the residence address of the signatory where he/she is registered to vote must be recorded. I explained that if the signatory records an address to which the signatory has moved subsequent to registering and has failed to make the change of registration as required by law, that the signature would not be counted. I also explained that mailing addresses were not acceptable as the residence address was required.

82.    In addition, I emphasized that the signatory's social security number or date of birth would be needed to distinguish among people having identical names and/or addresses.

83.    Plaintiff Stiver was issued initial petition sets that day. Each petition set consisted of 4 pages and a total 48 rows for petition signatures.

84.    The Application for Petition included a "For Office Use Only" section in which the Office of Election staff would notate when petition forms were issued to the Nader Campaign and when they were received from the Nader Campaign.

85.    Joint Exhibit 49 is a true and correct copy of the form entitled "An Application for Petition to Place the Names of Candidates for President and Vice President on the State of Hawaii General Election Ballot" signed by Plaintiff Stiver and used by the Office of Elections in tracking the issuing and receipt of petition sets from Plaintiff Stiver.

86.    The Office of Elections received its first group of petition sets from the Nader Campaign on July 26, 2004.

87.    The signatures were reviewed and verified against the SVRS in accordance with the applicable administrative rules.

88.    At the conclusion of the review of the petition sets submitted on July 26, 2004, I prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, which he signed without any changes.  My initials "LT" are listed in the lower left hand corner of the last page of the letter.

89.    The letter indicated that a total of 89 signatures were found in the petition sets submitted by Plaintiff Stiver.  Of the 89 signatures, 52 were found to be listed as "Active" (currently registered) in the SVRS, 2 were found to be listed as "Inactive" in the SVRS, 7 could not be verified because information on the

18

petition was insufficient (i.e., no social security number, date of birth, signature, or could not read the record), 25 did not appear in the SVRS, 2 could not be verified because the address information on the petition did not match the address information in the SVRS, and 1 provided a name on the petition which was different from the name indicated on the SVRS.

90.    The letter, dated August 2, 2004, containing the above referenced information was sent by certified mail return receipt requested.

91.    Joint Exhibit 52 is a true and correct copy of the August 2, 2004 letter sent to Plaintiff Stiver.

92.    Other than providing two petition sets on July 30, 2004, the Nader Campaign did not provide any additional petition sets until August 27, 2004, August 30, 2004, September 2, 2004, and finally on September 3, 2004, which was the deadline for the filing of its petition.

93.    Joint Exhibit 54 is the petition that was filed by Plaintiff Stiver on behalf of the Nader Campaign.

94.    A review of the Nader Campaign petition indicates that the vast majority of the signatories did not provide their social security number and that many of the names submitted were not legible.

95.    The petition signatures were reviewed and verified against the SVRS in accordance with the applicable administrative rules.

96.     I prepared a letter for Chief Election Officer Dwayne D. Yoshina's

signature, dated September 20, 2004, indicating that the Nader Campaign had not

obtained enough valid signatures and as such would not be placed on the general

election ballot.  My initials "lpt" are listed in the lower left hand corner of the last

page of the letter.  The letter was signed on his behalf by Office of Elections'

employee Robynn Yokooji, without any changes.

97.     Joint Exhibit 55 is a true and correct copy of the September 20, 2004

letter sent to Plaintiff Stiver.

98.     In subsequently proofing the calculations, I discovered that the

numbers initially released needed to be revised from 3,672 valid signatures to

3,124, which was decrease of 548 valid signatures.  Specifically, the petition was

originally separated into thirteen batches for purposes of counting the amount of

valid signatories.  When the amount of signatures for each of the thirteen batches

was added together, the amounts in batches 8 and 12 were counted twice.  Batch 8

had 131 valid signatories and batch 12 had 417 valid signatories.  The result of

counting the totals from these two batches twice was that total was accidentally

increased by 548 signatures, and this was reflected in the September 20, 2004 letter

to Plaintiff Stiver.

99.   On September 23, 2004, I met with Plaintiff Stiver at the Office of Elections and orally informed him of the error and explained to him that a letter would be sent to him with the corrected amount.

100.   During our meeting, Plaintiff Stiver, presented me with a letter requesting a hearing concerning the determination that the Nader Campaign had not obtained enough valid signatures.

101.   Joint Exhibit 57 is a true and correct copy of the September 23, 2004 letter received from Plaintiff Stiver requesting a hearing.

102.   I prepared a letter for Chief Election Officer Dwayne D. Yoshina's signature, dated September 24, 2004, indicating the revised numbers which were still less than the amount necessary for inclusion on the general election ballot.  My initials "lpt" are listed in the lower left hand corner of the letter.  The letter was signed by the Chief Election Officer, without any changes.

103.   Joint Exhibit 43 is a true and correct copy of the letter, dated September 24, 2004, that was mailed to Plaintiff Stiver, and which indicates that he received it on September 25, 2004.

104.   The Nader hearing commenced on September 29, 2004.

105.   Joint Exhibit 63 is a true and correct copy of the transcript of the September 29, 2004 hearing.

106.   Prior to the conclusion of the hearing, the Office of Elections and the Nader Campaign entered into a settlement agreement.

107.   On October 1, 2004, the Chief Election Officer approved the Nader Settlement Agreement, which provides that the signatures on the petition submitted by the Nader Campaign would be reviewed again in the presence of a Nader representative.

108.   During the review, the Nader representative would be allowed to flag the signatures he believed should have been counted.

109.   Finally, pursuant to the Nader Settlement Agreement, the Chief Election Officer would subsequently review the challenged signatures and his decision would be final.

110.   Joint Exhibit 35 is a true and correct copy of the Nader Settlement Agreement, dated October 1, 2004.

111.   On October 18, 2004, the Chief Election Officer issued his findings that the Nader Campaign had failed to obtain the requisite amount of valid signatures required by Hawaii Revised Statutes § 11-113.

112.   Joint Exhibit 36 is a true and correct copy of the findings of the Chief Election Officer, dated October 18, 2004.

113.   On March 5, 2008, I received a copy of Mr. Seitz's letter to the Court providing the names of individuals that his clients believed should be counted.

The letter included a list of names for the Peroutka Campaign and a list of names for the Nader Campaign. The lists provided the name of the signatory and the line and page number of the petition that they claimed the name could be found. Additionally, Mr. Seitz's letter indicated that he was also claiming that the list of names in Joint Exhibit 32 should be counted.

114.    In regards to Joint Exhibit 32, I found that the majority of the names should still not be counted as the signatory did not provide the required information on the petition form. However, there were some signatures which I counted. In reviewing the signatures that I counted, I found many of the names were poorly printed, and as such were illegible when they were initially reviewed. However, the provision of the list of typed names, and my many years of experience reviewing illegible signatures, made it easier for me to discern now in 2008 otherwise illegible signatures made in 2004.

115.    In regards to the list of names provided by the Nader Campaign and the Peroutka Campaign enclosed with Mr. Seitz's letter, the lists merely stated the signatory's name and provided the line and page of the petition that the signature was supposed to be found.

116.    Mr. Seitz's letter indicated that both of these lists were of signatories who had only provided P.O. Box addresses and apparently not residence addresses. As previously indicated in this declaration, the provision of P.O. Box address is not

sufficient for purposes of verifying that the signatory is who he or she claims to be, and it is also not sufficient for the Office of Elections to determine if the signatory is a currently registered voter, in that we can not ascertain where the individual resides, and as such whether his or her voter registration is current.

117.    In the end, I did not find a sufficient amount of valid signatures which would have allowed either the Nader or Peroutka Campaigns to obtain the necessary 3,711 valid signatures of currently registered voters for purposes of placement on the 2004 General Election Ballot.

DATED:  Honolulu, Hawaii, March 7, 2008.

LORI TOMCZYK

CERTIFICATE OF SERVICE

I hereby certify, a true and correct copy of the foregoing document was duly

served, on this date, upon the following individual(s) in the manner indicated:

ERIC A. SEITZ, ESQ.                    [ X ]  HAND-DELIVERY
LAWRENCE I. KAWASAKI, ESQ.
820 Mililani Street, Suite 714         [   ]  U.S. MAIL
Honolulu, Hawaii 96813                 [   ]  FAX
Ph: 533-7434/Fax: 545-3608
eseitzatty@yahoo.com                   [   ]  E-MAIL


        DATED:  Honolulu, Hawaii, March 7, 2008.

                                    AARON H. SCHULANER